STATE of Tennessee, Appellee,

v.

**Ricky Earl MELVIN, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

June 28, 1995.

Application for Permission to Appeal Denied by Supreme Court Nov. 27, 1995.

Thomas T. Overton, Nashville, for Appellant.

Charles W. Burson, Attorney General & Reporter, Kathy Morante Principe, Deputy Attorney General, Victor S. Johnson, III, District Attorney General, Kymberly L.A. Hattaway, Asst. District Attorney General, Dan Hamm, Asst. District Attorney General, Nashville, for Appellee.

## OPINION

JONES, Judge.

The appellant, Ricky Earl Melvin, was convicted of seven (7) counts of aggravated rape by a jury of his peers. The jury sentenced the appellant to serve twenty (20) years in the Department of Correction in counts four,

twenty-one, twenty-two, twenty-three, and twenty-four. The trial court found that the appellant was a standard offender and imposed a Range I sentence of confinement for twenty-five (25) years in the Department of Correction in counts ten and eleven. The trial court ordered that counts ten and eleven are to be served concurrently. However, these sentences are to be served consecutively to counts four, twenty-one, and twenty-two. The effective sentence imposed by the trial court is eighty-five (85) years.

Five issues are presented for review. The appellant contends that the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational trier of fact that he was guilty of seven counts of aggravated rape beyond a reasonable doubt. He also contends that the trial court committed error of prejudicial dimensions by (a) refusing to strike the testimony of the nurse practitioner on the ground the witness "was not qualified to give a medical diagnosis," (b) denying his motion to withdraw as counsel when counsel became a material witness in the proceeding, (c) imposing excessive sentences, and (d) ordering consecutive sentencing.

The judgments of conviction are affirmed. The order on consecutive sentencing is modified; and counts ten and eleven are remanded to the trial court for a new sentencing hearing.

The parents of G.H.[1] worked at night. Her parents made arrangements with Wanda Melvin, G.H.'s maternal aunt, and the appellant to keep G.H. during the week. G.H. lived with her parents each weekend. On occasion, a cousin, M.H., would visit G.H. at the Melvins' residence.

The appellant began sexually abusing G.H. when she was five years of age. On each occasion, G.H.'s aunt was not at home. The appellant made G.H. place her hand on a Bible and swear that she would not tell anyone about the sexual abuse. He told her that no one would believe her if she attempted to reveal the sexual abuse. He also told her he

would hurt her and her mother if she told anyone.

On May 7, 1982, Wanda Melvin went to the hospital and gave birth to a child. When the appellant left the hospital, he took G.H. to the Melvin residence. That night he made G.H. sleep in the same bed with him. G.H. testified the appellant penetrated her vagina with his finger and reproductive organ, performed cunnilingus upon her, and made her perform fellatio upon him. The jury convicted the appellant in count twenty-one of fellatio, count twenty-two of vaginal penetration with his reproductive organ, count twenty-three of digital penetration, and count twenty-four of cunnilingus. G.H. was the victim in each count; and she was under the age of thirteen when these acts of sexual abuse occurred.

When M.H. was ten years of age and G.H. was approximately eight years of age, the appellant gave them a bath while M.H. was visiting G.H. at the Melvin residence. The appellant subsequently removed his clothing and got into the bath tub with M.H. and G.H. M.H. testified that while her aunt was away from the residence the appellant got into bed with M.H. and G.H., fondled her breasts, digitally penetrated her vagina, performed cunnilingus upon her, made her perform fellatio upon him, and made her masturbate his reproductive organ. In count four, the jury found the appellant guilty of one count of aggravated rape, the unlawful sexual penetration of M.H.

In 1982, M.H. was visiting her cousin at the Melvin residence. The appellant was smoking marijuana, and he had G.H. and M.H. smoke the marijuana cigarette. Later, he removed their sleeping garments and performed a series of sexual acts with M.H., including fellatio and cunnilingus. The jury found the appellant guilty of fellatio in count ten of the indictment and cunnilingus in count eleven of the indictment.

The appellant testified in support of his defense. He emphatically denied that he had sexually abused either G.H. or M.H.

---

1. It is the policy of this Court not to use the names of children who have been the victims of sexual abuse.

## I.

The appellant contends that the evidence contained in the record is insufficient, as a matter of law, to support his conviction of seven counts of aggravated rape. He argues that "it is very clear from the record that the evidence in the trial contained numerous contradictions and was insufficient to support the findings of guilty by the trier of fact beyond a reasonable doubt and preponderated in favor of the Appellant's innocence." In other words, the appellant's argument is predicated upon contradictions in the testimony given by the various witnesses as well as their prior inconsistent statements.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at the trial is sufficient "to support the finding by the trier of fact of guilty beyond a reasonable doubt." Tenn. R.App.P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn.Crim. App.), *per. app. denied* (Tenn.1990).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Cabbage*, 571 S.W.2d at 835.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *Cabbage*, 571 S.W.2d at 835. In *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, *Grace*, 493 S.W.2d at 476, the appellant has the burden of illustrating why the evidence contained in the record is insufficient to support the verdicts returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). This Court will not disturb a verdict of guilty due to the sufficiency of the evidence unless the facts contained in the record, and any inferences which may be drawn from the facts, are insufficient, as a matter of law, for a rational trier of fact to find an accused guilty beyond a reasonable doubt. *Tuggle*, 639 S.W.2d at 914.

There is clearly sufficient evidence contained in the record from which a rational trier of fact could conclude that the appellant is guilty of seven counts of aggravated rape beyond a reasonable doubt. Tenn.R.App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This entire case hinged upon the credibility of the witnesses. The jury accredited the testimony of the victims and discredited the testimony of the appellant.

This issue is without merit.

## II.

When it was reported that G.H. had been the victim of sexual abuse, she was taken to the Metropolitan General Hospital. G.H. was examined by Paula Wuescher, a family nurse practitioner and a member of the child sexual abuse team. Wuescher testified that her investigation revealed physical characteristics that were consistent with sexual abuse.

The appellant did not challenge Wuescher's right to testify or her ability to express an opinion either prior to or during her testimony. Defense counsel waited until the witness had been dismissed and the state had rested its case in chief to seek the entry of an order striking her testimony. In making the motion, counsel stated: "At this time, I would ... move to strike her [Wuescher's] testimony due to the fact that I don't believe it is competent testimony. She was not qual-

ified as an expert." When asked the basis of his motion, defense counsel stated:

> Just basically I've been told [by] another individual who is pretty close to the nurses association that part of their guidelines as far as being a nurse, it specifically states in those guidelines that they are not competent to give a diagnosis of an individual. Of course, I didn't have time between last night when I found this out and today to go find those guidelines that all nurses in the State of Tennessee are to abide by, but it is my understanding that nurse is not allowed to give a diagnosis. That has to be done by a doctor, and I would ask Your Honor to strike her testimony, and instruct the jury to disregard her testimony as to the medical evidence that she found regarding ... [G.H.] and to instruct the jury that was not competent testimony.

The trial court denied the motion to strike.

■ The purpose of a motion to strike evidence is to exclude incompetent evidence from the record and consideration by the trier of fact. The motion may be directed to the exclusion of a particular item of evidence or testimony, or it may be directed at the entire testimony of a witness. *See Capps v. State,* 523 S.W.2d 213, 216 (Tenn.Crim.App. 1974), *cert. denied* (Tenn.1975); *McLean v. Union Station Co.,* 1 Tenn.Civ.App. 457, 462 (1911). The motion should be made as soon as counsel discovers that the evidence in question is incompetent. *See Pruitt v. State,* 216 Tenn. 686, 693, 393 S.W.2d 747, 751 (1965).

Defense counsel knew, or should have known, that Wuescher would be called as a prosecution witness. Her name appears on the face of the indictment under the heading "summons witnesses for the state." Beside her name is her place of employment "Metro General Hospital." Thus, defense counsel should have explored, investigated and been prepared to challenge the nature and scope of Wuescher's testimony prior to or during her testimony.

■ In any event, the trial court did not abuse its discretion in refusing to strike Wuescher's testimony because the appellant failed to establish that the testimony she gave was, in fact, incompetent. What an unknown person told defense counsel regarding the guidelines governing nursing is not a sufficient basis for holding that Wuescher's testimony was incompetent, and, therefore, should be stricken. Moreover, defense counsel apparently does not understand the difference between a "registered nurse" and a "nurse practitioner."

This issue is without merit.

## III.

During defense counsel's cross-examination of M.H., the following colloquy occurred:

Q. Okay. And they [DHS] told you they wanted you to go for some counseling, did they not?

A. Yes, they did.

Q. You told them you didn't need any counseling?

A. No.

Q. And I believe you testified at earlier hearings that you had not had any problems dealing with these things since they happened?

A. I deal with it. I'm 21 years old. I can block things out if I don't want to remember, but with ya'll calling and harassing me at work like you did the last time, it made me lose it. And I lost my first husband because of this. Ya'll brought all this back. I did not want him touching me, and we had not been married six months.

Q. I called and harassed you at work?

A. Yes, you did.

Q. Is that what you are testifying?

A. Yes.

Q. How did I harass you at work?

A. Called me and told me you was from the D.A.'s office, and would like to talk to me. Never told me you were Ricky's lawyer. You done the same thing to my mother.

During a sidebar conference, defense counsel stated: "[S]he has made me a witness to this trial, and I'm going to have to move to withdraw as Ricky Melvin's counsel at this time." The trial court advised counsel that the court would "just strike that [the wit-

ness's statements] and tell them [the jury] that she is mistaken and that I'm satisfied it is not true, and that will be the end of it." Counsel then stated: "That's fine, but I would never do anything like that." The trial court gave the following curative instruction:

 All right. Let me say two things about this last subject matter that we got into.

First of all, I think what we have here is what I'm going to assume is a legitimate misunderstanding. I do not by any means want you to think that the witness deliberately misstated anything, nor do I want you to think counsel did what the witness thinks that he did. She is mistaken.

Now that has nothing to do with this case whatsoever, so having told you that it is of no consequence anyway, let me now tell you to strike it from you[r] consideration. It is totally irrelevant. I think it is a genuine misunderstanding, but it doesn't have anything to do with the case anyway, so we are going to move on.

Defense counsel stated in response to the instruction: "Thank you, Your Honor."

 The trial court did not abuse its discretion in denying defense counsel's motion to withdraw as counsel. A jury is presumed to have followed a trial court's curative instruction in the absence of evidence to the contrary. *State v. Baker*, 751 S.W.2d 154, 164 (Tenn.Crim.App.), *per. app. denied* (Tenn.1987); *State v. Blackmon*, 701 S.W.2d 228, 233 (Tenn.Crim.App.), *per. app. denied* (Tenn.1985). The appellant has failed to establish that the jury did not follow this instruction. Moreover, the statement of a trial court that an event did not actually happen is much stronger than a defense lawyer taking the witness stand and making such a statement.

This issue is without merit.

## IV. and V.

 The appellant raises three sentencing issues. He contends:

a) The failure of the trial court to apply the provisions of the Criminal Sentencing Reform Act of 1982 or 1989 to the offenses that occurred prior to the effective date of the 1982 Act "was prejudicial to him and violated his State and Federal constitutional rights;"

b) The sentences imposed by the trial court in counts ten and eleven are excessive because the trial court erroneously applied two enhancing factors to elevate his sentence within the appropriate range; and

c) The trial court erred by ordering consecutive sentencing.

Since the record does not reflect that the trial court calculated the sentences for counts ten and eleven under both the 1982 Act and the 1989 Act, these counts must be remanded to the trial court so that these calculations can be made, and the least onerous sentence imposed in these counts. *State v. Pearson*, 858 S.W.2d 879 (Tenn.1993). However, the issues raised by the appellant will be addressed in this opinion.

### A.

 The jury found the appellant guilty of five offenses that occurred before the effective date of the Criminal Sentencing Reform Act of 1982 (1982 Act). Consequently, the jury determined the appropriate punishment that should be assessed in these five cases. The appellant contends in this Court that the failure of the trial court to sentence him pursuant to the 1982 Act violated his federal and state constitutional rights. He does not state the rights that were violated.

Neither the 1982 Act nor the 1989 Act supports the appellant's contention. The 1982 Act provided:

(a) All persons who commit crimes *on or after* July 1, 1982, shall be tried and sentenced under this chapter. *For all* persons who committed crimes *prior* to July 1, 1982, the *prior law shall apply* and shall remain in full force and effect in every respect, including but not limited to *sentencing*, parole and probation.

Tenn.Code Ann. § 40-35-112 (Supp.1987) (Repealed) (Emphasis added). The 1989 Act contains an identical provision: "For all persons who committed crimes *prior* to July 1, 1982, *prior law shall apply* and remain in full

force and effect in every respect, including, but not limited to, *sentencing*, parole and probation." Tenn.Code Ann. § 40–35–117. (Emphasis added).

The fact that the General Assembly opted to provide that people accused of committing an offense prior to July 1, 1982, would be tried and sentenced pursuant to the law in effect when the offense occurred did not violate the appellant's federal or state constitutional rights. *See State ex rel. Stewart v. McWherter,* 857 S.W.2d 875 (Tenn.Crim.App. 1992), *per. app. denied* (Tenn.1993). The General Assembly has the right to promulgate rules and regulations governing the method of sentencing and the length of the sentences to be imposed for specific crimes.

This issue is without merit.

## B.

When an accused challenges the length of his sentence, it is the duty of this Court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d). However, there are exceptions to this statutory mandate. First, the requirement that this Court presume the determinations made by the trial court are correct is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991). Second, the presumption does not extend to the legal conclusions reached by the trial court in sentencing the accused. *State v. Raines,* 882 S.W.2d 376, 383 (Tenn.Crim. App.), *per. app. denied* (Tenn.1994). Third, the presumption does not apply when the determinations made by the trial court are predicated upon uncontroverted facts. *State v. Bonestel,* 871 S.W.2d 163, 166 (Tenn.Crim. App.1993).

In conducting a *de novo* review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offenses, and (f) the appellant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–103, –210. *See State v. Scott,* 735 S.W.2d 825, 829 (Tenn.Crim.App.), *per. app. denied* (Tenn.1987).

The trial court, as the trier of fact at sentencing hearings, has the opportunity to observe the manner and the demeanor of the witnesses. Consequently, this Court gives great weight to the determinations made by the trial court concerning the credibility of the witnesses; and this Court will not interfere with the trial court's findings of fact in this regard unless the evidence contained in the record clearly preponderates against these findings. *Raines,* 882 S.W.2d at 383. There are exceptions to this rule. This Court will not give such deference to the trial court's findings when evidence is stipulated or is in the form of a deposition, a statement contained in the presentence report, or a record introduced into evidence. In these instances, the trial court does not observe the manner and demeanor of the witnesses.

The accused, as the appellant and aggrieved party, has the burden of establishing that the sentence imposed by the trial court was erroneous. *See* Sentencing Commission Comments to Tenn.Code Ann. § 40–35–401(d); *Ashby,* 823 S.W.2d at 169; *State v. Fletcher,* 805 S.W.2d 785, 786 (Tenn.Crim. App.1991).

## 1.

The trial court found that the evidence established three enhancement factors and used these factors to enhance the appellant's punishment in counts ten and eleven within the appropriate range. The enhancement factors found by the trial court were: (a) the victims were particularly vulnerable due to their age, Tenn.Code Ann. § 40–35–114(4), (b) the personal injuries inflicted to the victims were particularly great, Tenn.Code Ann. § 40–35–114(6), and (c) the appellant abused a position of private trust when committing the offenses. § 40–35–114(15).

The appellant contends that enhancement factor (4) does not apply because the age of the victims enhanced the offenses from rape

to aggravated rape, and, therefore, was an element of the offenses. The appellant further contends that enhancement factor (6) does not apply because (a) it constitutes an element of the offense or is inherent in the nature of the offense and (b) the state failed to prove that the victims had suffered psychological injuries that were "particularly great" based upon the evidence adduced at the trial.

It is elementary that an enhancement factor may not be used to increase a sentence within the appropriate range unless the factor is established by the evidence. *State v. Butler*, 880 S.W.2d 395 (Tenn.Crim.App. 1994); *Raines*, 882 S.W.2d at 384; *State v. Brown*, 871 S.W.2d 492, 495 (Tenn.Crim.App. 1993). The record does not support either enhancement factor (4) or (6).

 A victim is "particularly vulnerable" when the victim is incapable of resisting, summoning help, or testifying against the perpetrator." *State v. Adams*, 864 S.W.2d 31, 34–35 (Tenn.1993). This enhancement factor "relates more to the natural physical and mental limitations of the victim than merely to the victim's age;" and this factor may be used to enhance a sentence for a sexual offense committed against a minor notwithstanding the fact the age of the minor was used to elevate the crime to an aggravated offense. *Adams*, 864 S.W.2d at 35. The state has the burden of proving "the victim's limitations rendering him or her particularly vulnerable." *Adams*, 864 S.W.2d at 35.

The victim, M.H., was between ten and eleven years of age when the appellant committed the offenses. She lived with her parents. She occasionally visited her cousin, G.H., when G.H. resided in the appellant's residence; and on occasion M.H. would stay there with her aunt, Wanda Melvin, when the weather was exceptionally bad or her parents had to go somewhere. If she wanted to leave the appellant's residence, she could call her parents and one or both parents would come get her and take her home. This occurred on at least one occasion. M.H. testified that the appellant told her that what had occurred was her fault; and he continually threatened to kill her, her mother and her sister if she told what he did to her. She

refused to tell her parents what had occurred because she was afraid her father would think that she was at fault, and he would spank her.

 The state argues that the physical condition of M.H. made her "particularly vulnerable." M.H. testified that she was born without a rectal opening. She had three serious surgical procedures performed on her between birth and her second birthday. As a result, she sometimes has difficulty controlling her bowels. Also, she was born with one kidney; and her lower intestine was not fully developed. However, the state, having the burden of proof, has failed to illustrate how these physical conditions made M.H. "particularly vulnerable." M.H. did not state or infer that her physical condition caused her to become "particularly vulnerable."

 The term "personal injury," as used in enhancement factor (6) is broad enough to embrace the emotional injuries and psychological scarring sustained by the victim of a sexual offense. *State v. Smith*, 891 S.W.2d 922 (Tenn.Crim.App.), *per. app. denied* (Tenn.1994); *State v. Chad Parker*, Rutherford County No. 01–C–01–9301–CC–00040, 1993 WL 366562 (Tenn.Crim.App., Nashville, September 16, 1993); *State v. Steven K. Sterna*, Davidson County No. 01–C–01–9007–CR–00163, 1991 WL 135006 (Tenn.Crim.App., Nashville, July 24, 1991), *per. app. denied* (Tenn.1991). Before this factor may be used to enhance a sentence within the appropriate range, the state must establish that the emotional injuries and psychological scarring are "particularly great." Tenn.Code Ann. § 40–35–114(6). *See State v. Lorenzo Puente Salazar*, Shelby County No. 02–C–01–9105–CR–00098, 1992 WL 4785 (Tenn.Crim.App., Jackson, January 15, 1992); *Sterna*, slip op. at 8.

 In this case, the state failed to establish that the emotional and psychological injury sustained by M.H. was "particularly great." M.H. rejected the DHS request that she submit to a physical examination after the sexual abuse was discovered. She gave her reasons for refusing to submit to the examination. M.H. also rejected the DHS offer of psychological assistance and therapy;

and she continued to reject the need for such assistance until the trial of this case. She stated on cross-examination: "I deal with it. I'm twenty-one years old. I can block things out if I don't want to remember...." The mother of M.H. testified that M.H. is "highly nervous now. Every little thing upsets her.... She is scared of men. She doesn't want to be alone in a room with one." She verified that M.H. simply refuses to seek assistance.

In *State v. Sterna*, the accused was convicted of aggravated sexual battery. The trial court used enhancement factor (6), among other factors, to enhance the accused's sentence. The opinion does not set forth what "mental and physical injuries" the victim suffered at the hands of the accused. In holding that the trial court should not have used this factor to enhance the accused's sentence, this Court said:

> We agree with the finding that the mental and emotional injuries were particularly great. This is borne out by the child's subsequent conduct. However, there is no proof that the crimes will have a "lifelong, serious emotional impact upon the child." In the absence of expert testimony to that effect, that finding is inappropriate.

Slip op at 8.

In *State v. Salazar*, the accused was convicted of aggravated rape. The trial court used enhancement factor (6) to increase the accused's sentence. The basis of the trial Court's utilization of this factor was its conclusion that a child six years of age would suffer from "emotional and mental trauma" when the child was the victim of a sex offense. The mother of the child testified that the child had "continuing nightmares." In holding that the trial court should not have used this enhancement factor to enhance the accused's sentence, this Court said:

> Clearly, rape is injurious *per se* to the body and mind of the victim. In this regard, the legislature has seen fit to enhance the offense to aggravated rape if a child is involved. In consideration of this automatic enhancement, it is questionable that a trial court is entitled to rely solely upon the age of the victim as a basis to find that the mental trauma is "particular-

ly great." Further, the record is totally devoid of any evidence from which the trial court could determine that the mental disturbance shown in the record was greater than, less than, or equivalent to that which is ordinarily involved with this serious offense. Under such circumstances, the record does not support the trial court's finding that the mental trauma was "particularly great."

Slip op at 7–8.

This Court does not dispute that M.H. sustained a psychological injury as a result of the appellant sexually abusing her. However, the evidence does not support a finding that the psychological injury was particularly great.

The appellant does not challenge the trial court's use of enhancement factor (15) to enhance his sentence. Nevertheless, the use of this factor violated the *ex post facto* provision contained in the Tennessee Constitution because these offenses occurred prior to the effective date of the Criminal Sentencing Reform Act of 1989. *See Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); *State v. Pearson*, 858 S.W.2d 879 (Tenn.1993). Enhancement factor (15) was not contained in the 1982 Act.

### 2.

The appellant contends that the trial court abused its discretion in requiring four of the seven sentences to be served consecutively. He argues that he has no prior record of criminal convictions, he is uneducated, he is a hard worker, and he has the support of his family and members of his community in Alabama notwithstanding his convictions. He also states that he "had been a law abiding citizen of [his] community since the last alleged act in 1983 until his conviction in 1993." According to the appellant, "this would show a propensity toward rehabilitation."

The state argues that "the circumstances all argue in favor of consecutive sentencing." The state noted that the appellant was the victims' uncle by marriage and he used this position to gain access to them. The state also cited the age of the victims, that the

undetected sexual activity spanned an extremely long time with many acts of sexual abuse, and that the residual physical and mental injuries sustained by the victims were great.

It is an elementary principle of law that a court may require an accused, who has been convicted of two or more offenses, to serve the sentences for the offenses consecutively when certain criteria is established by the evidence adduced at the trial or at the sentencing hearing. As to sexual offenses, involving minors, Tenn.Code Ann. § 40–35–115(b) provides:

The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

* * * * * *

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

The use of enhancement factors to increase the length of a sentence within the appropriate range does not bar the use of these facts in determining whether consecutive sentences should be imposed. This Court has held that such double use of the factors does not do violence to any constitutional provision, statute, rule or common law decision. See State v. Meeks, 867 S.W.2d 361, 377 (Tenn.Crim.App.), per. app. denied (Tenn.1993); State v. Davis, 825 S.W.2d 109, 113 (Tenn.Crim.App.1991), per. app. denied (Tenn.1992); State v. Bobby Eugene Pipes, Hardin County No. 02–C–01–9212–CC–00288, 1993 WL 220410 (Tenn.Crim.App., Jackson, June 23, 1993).

In this case, the accused was convicted of seven counts of aggravated rape and the trial court required four of the counts to be served consecutively for an effective sentence of eighty-five years. As previously noted, the appellant had access to G.H. on a regular basis since she was living in the appellant's residence five days a week. His access to M.H. was limited because she was only in the appellant's residence to visit and play with G.H., or for Wanda Melvin to watch her while her parents went elsewhere. M.H. lived at home with her parents. The offenses involved penetration of G.H. with his sex organ, and digital penetration, cunnilingus, and fellatio that involved both G.H. and M.H.

While the record establishes that these acts of sexual abuse occurred for several years, the jury did not convict the appellant for most of these offenses. The appellant was indicted for twenty-eight counts of child abuse involving these victims. The jury acquitted him of the offenses alleged in twenty-one counts.

All four convictions for sexually abusing G.H. were committed on May 7, 1982—while Wanda Melvin was hospitalized after giving birth to one of the couple's children. G.H. testified that she was required to sleep with the appellant on this occasion. The appellant was acquitted of all other counts of alleged child sexual abuse involving G.H.

The convictions for sexually abusing M.H. occurred on two separate dates. The first offense occurred when M.H. was ten years of age. While the appellant was indicted for two offenses allegedly occurring on this occasion, he was convicted of only one offense. The remaining two offenses occurred in 1982 while M.H. was either ten or eleven years of age.

When, as here, the accused is acquitted of numerous offenses for child sexual abuse, the trial court should not consider the offenses ending in acquittal in determining "the time span of defendant's undetected sexual activity." The jury's acquittals should not be ignored or abandoned in favor of the trial court's separate findings of fact.

The record establishes, albeit marginally, that consecutive sentencing is warranted. However, this Court modifies the judgment of the trial court by requiring that the sentences in counts four, ten and twenty-one be served consecutively and the balance of the sentences imposed be served concurrently.

SCOTT, P.J., and JULIAN P. GUINN, Special Judge, concur.