IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 25, 2001 Session

## STATE OF TENNESSEE v. HERSHELL W. ESTES, JR.

**Direct Appeal from the Criminal Court for Knox County**
**No. 62573     Richard R. Baumgartner, Judge**

_____

**No. E2000-01869-CCA-R3-CD**
**February 4, 2002**
_____

A Knox County jury convicted the defendant of one count of aggravated sexual battery and one count of rape of a child. For the former the trial court sentenced the defendant to ten years, and for the latter he received a sentence of twenty-three years. The trial court then ordered these sentences to run concurrently. Subsequently, the defendant brought an unsuccessful motion for new trial and now pursues the present appeal in this Court raising two issues. More specifically, the defendant avers that the trial court erred 1) by limiting defense counsel's questioning of the victim concerning her prior sexual experiences and 2) by improperly utilizing two enhancement factors in sentencing the defendant. Upon review of these issues, we find that neither merit reversal and, thus, affirm the convictions and sentences. However, we have noted error in the rape of a child judgment requiring a remand for correction thereof.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed and Remanded.**

JERRY SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Kenneth F. Irvine, Jr., Knoxville, Tennessee, for appellant, Hershell W. Estes, Jr.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Kevin Allen, Robert Headrick, and Leland Price, Assistant District Attorneys General, for appellee, State of Tennessee.

## OPINION

## Factual Background

The victim, T. E.,[1] had not seen the defendant, her biological father, in numerous years but asked her mother to help her contact the defendant because the victim wanted to get to know him. The search was successful, and the defendant traveled to Kentucky on three or four occasions to spend time with the victim. Again motivated by a desire to establish a relationship with her father, T. E. moved down to Tennessee and began living with him in 1994. At some point after the victim moved in with the defendant, he began french-kissing her.

The defendant later became engaged to Cindy Mansfield, a person T. E. admittedly did not like. Thereafter both the defendant and the victim moved into the small home where Mansfield and her mother, Terry Runion, resided. T. E. testified that while there, her father's french-kissing of her continued. She further described the events of the night from which these charges arose. According to the victim, she had gone to the defendant's bedroom to watch television.[2] Wearing shorts, panties, and a nightshirt that extended almost to her knees, the victim lay on the bed next to her father. As recounted by the victim, the defendant began french-kissing her; went to the bathroom; came back to the bed; rubbed her chest; took off her shorts and panties; pulled her shirt up around her neck; rubbed her vagina; inserted his fingers inside her vagina and moved them in a circular direction; climbed on top of her; and penetrated her vagina with his penis.

The victim alleged that this had transpired prior to Thanksgiving of 1995.[3] Though the victim told no one then about what had occurred, she returned to her mother's home in Kentucky for Thanksgiving and indicated that she wished to stay there. Subsequently, while spending the night with a classmate whom she trusted, the victim told her classmate about what had happened. This revelation ultimately led to the authorities being contacted and the resulting prosecution.

## Limitation of Cross-Examination

Through his first issue the defendant complains that the trial court too severely restricted his ability to cross-examine the victim concerning her prior sexual experiences. He particularly argues that he should have been allowed to delve more deeply into two incidents: one involving a prior instance of voluntary sexual intercourse and one involving a previous molestation.

Knowing that he wished to question the victim about both of these instances, the defendant filed a pre-trial "NOTICE OF INTENT TO OFFER EVIDENCE PURSUANT TO TENN. R. EVID.

---

[1] It is the policy of this Court to use initials in referring to child sexual abuse victims.

[2] This was a common occurrence because the television in the defendant's and Cindy's bedroom was better than the one in the living room.

[3] There was no dispute that the victim had been under the age of thirteen at that time.

412." We, thus, begin our analysis by observing that Tennessee Rule of Evidence 412 provides in pertinent part:

> (c) Specific instances of conduct. Evidence of specific instances of a victim's sexual behavior is inadmissible unless admitted in accordance with the procedures in subdivision (d) of this rule, and the evidence is:
>
> (1) Required by the Tennessee or United States Constitution, or
>
> (2) Offered by the defendant on the issue of credibility of the victim, provided the prosecutor or victim has presented evidence as to the victim's sexual behavior, and only to the extent needed to rebut the specific evidence presented by the prosecutor or victim, or
>
> (3) If the sexual behavior was with the accused, on the issue of consent, or
>
> (4) If the sexual behavior was with persons other than the accused,
>
> (i) to rebut or explain scientific or medical evidence, or
>
> (ii) to prove or explain the source of semen, injury, disease, or knowledge of sexual matters, or
>
> (iii) to prove consent if the evidence is of a pattern of sexual behavior so distinctive and so closely resembling the accused's version of the alleged encounter with the victim that it tends to prove that the victim consented to the act charged or behaved in such a manner as to lead the defendant reasonably to believe that the victim consented.

Tenn. R. Evid. 412(c). In addition, Tennessee Rule of Evidence 412 also states:

> If the court determines that the evidence which the accused seeks to offer satisfies subdivisions (b) or (c) and that the probative value of the evidence outweighs its unfair prejudice to the victim, the evidence shall be admissible in the proceeding to the extent an order made by the court specifies the evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

Tenn. R. Evid. 412(d)(4).

Turning first to the prior incident of sexual intercourse, we again observe that the defendant's stated purpose for seeking to introduce the contested additional information was "to prove or explain knowledge of sexual matters." See Tenn. R. Evid. 412(c)(4)(ii). This proof involved an incident of voluntary sexual intercourse that had occurred between the victim and her step-brother at some point before the victim had come to live with her father. Neither side disputed that such had taken place.

In handling this matter pre-trial, the lower court heard argument from both the defense and prosecution; reviewed the offer of proof and the full testimony of the victim;[4] researched precedent; and decided that the defense would be allowed to ask about this prior experience but would not be allowed to delve into the specifics thereof. The trial court, therefore, stated that the defense would be permitted to ask the following question: "Have you had or did you have prior to this alleged offense with the defendant sexual intercourse with another individual?" The trial judge concluded that such would afford the defendant "the opportunity to acknowledge or present to the jury the fact that [the victim] could have learned about this particular activity in another manner" separate from the incident involving the defendant.[5]

During the trial both the prosecution and the defense asked the defendant about this experience. After detailing the defendant's actions relative to these charges, the prosecution asked if the victim had known what had been happening to her. When T. E. replied, "A little bit. Not really, though[,]" the prosecution followed up by inquiring, "Had somebody else put their [sic] penis in your vagina before that?" The victim then indicated that this was true and answered affirmatively when the prosecutor asked, "So did you know what your dad [the defendant] was doing?" Furthermore, on cross-examination, defense counsel queried, "before you came to Knoxville, did you have sexual intercourse with someone other than" the defendant?[6] Once again, T. E. acknowledged that she had.

At the outset of our analysis, we observe that "[t]rial judges are empowered with great discretion regarding the trial process, including the scope of cross-examination," and that such "discretion will not be disturbed unless an abuse" thereof is found. State v. Williams, 929 S.W.2d 385, 389 (Tenn. Crim. App. 1996). We further note that the Advisory Commission Comments to Rule 412 explain that this rule was designed to "strike[] a balance between the paramount interests of the accused in a fair trial and the important interests of the sexual assault victim in avoiding an unnecessary, degrading, and embarrassing invasion of sexual privacy." These dual sets of interests are vitally important and are to be carefully weighed by the trial court in making these decisions.

After reviewing the record provided, we find that the trial judge in the instant case took great care to protect the concerns of both the defendant and the victim through the allowed inquiry. See State v. Steven Otis Nicely, No. 03C01-9805-CR-00174, 1999 WL 826029, at **6-7 (Tenn. Crim.

---

[4] The first trial of this matter had resulted in a hung jury; thus, the trial court had access to not only the prior offer of proof but also the victim's previous trial testimony.

[5] Immediately thereafter the trial court asked, "Does that solve all the questions we have for that issue?" to which the defense responded, "It does for the defendant, Your Honor."

[6] Defense counsel had begun this series of questions by establishing that T. E. had been around nine years old and in the third grade prior to coming to Knoxville. Immediately thereafter he attempted to ask if the victim had engaged in consensual sexual intercourse before moving to live with the defendant. The State objected, and the trial court instructed the defense to rephrase the question without using the word "consensual."

App. at Knoxville, Oct. 18, 1999).[7] Though the defendant avers that the trial court too severely restricted his right to confront his accuser, we determine that the jurors were adequately exposed to this separate basis for the victim's knowledge of sexual matters without permitting inquiry into superfluous details of a further embarrassing and/or personal nature to the victim. This portion of the defendant's issue is, therefore, without merit.

We next address the alleged error involving the trial court's limitation of the defense relative to the instance of prior sexual abuse. Again, no dispute exists concerning whether T. E. was molested at a foster home when she was younger. During cross-examination the victim indicated that she had not quickly told about the alleged abuse by her father because she did not think that she would be believed. At that point the defense sought to question her "about her prior abuse or reporting it and how it was taken seriously that, by reporting this would happen." As the jury-out hearing concerning this matter began, defense counsel elaborated on the purpose for which this evidence was being offered. More specifically, defense counsel stated:

> Your Honor, what I would be offering is evidence related to the fact that [the victim], when she was younger, she was living in a foster home at which point she was sexually abused, and she reported it. And that, as a result of reporting it, that gentleman was prosecuted, and I would offer that to show that she knew what would happen, and that her testimony now that she didn't tell anyone, because she didn't think she would be believed is in contradiction to what she knew from her own experience.

When faced with opposition from the prosecutor, defense counsel added: "I am not sure Rule 412 applies in this situation. This is not being offered to show sexual promiscuity or anything of that nature . . . . The purpose is to contradict her testimony as to why she says she did not report."

Again over the opposition of the prosecution, the trial judge determined that this was a legitimate area for inquiry and stated: "I don't want you going into any details. The question is: Have you previously reported sexual abuse? What happened as a result of that? That is it."[8] After the jury returned, the following exchange occurred:

[Defense Counsel]    Q. Prior to this time, however, you reported sexual abuse, didn't you?
[T. E.]    A. Yes.
[Defense Counsel]    Q. And what happened when you reported sexual abuse that time?
[T. E.]    A. He got followed up with many more counts and got arrested.

Once more, we do not find an abuse of the trial court's discretion. We agree with the trial judge that the details of the abuse were not relevant to the defendant's stated purpose and that the

---

[7] A similar procedure was followed in Nicely, and the defendant commendably cites this case as being factually the most similar to the instant situation. See State v. Steven Otis Nicely, 1999 WL 826029, at **6-7. However, he concludes that Nicely is distinguishable because the present facts are not sufficiently analogous. We respectfully disagree and find Nicely dispositive.

[8] Defense counsel offered no additional argument nor did he raise any objection to this solution.

latter was satisfied by the above colloquy. Moreover, while the defendant did list this abuse in his aforementioned pre-trial notice, we do not see that he argued in the jury-out hearing the need for testimony concerning the actual molestation. Unlike the defendant's brief, which now suggests that such proof should have been allowed to further explain the victim's knowledge of sexual matters, at trial defense counsel claimed that the inquiry was needed for impeachment purposes with respect to the delay in reporting the sexual abuse in this case. "It is elementary that a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this Court." State v. Dobbins, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988). Thus, this portion of the defendant's issue merits no relief either.

## **Sentencing**

In his second issue the defendant contends that the trial court improperly applied two enhancement factors at the conclusion of his sentencing hearing. The alleged erroneously utilized factors involve the trial court's finding (1) that particularly great personal injuries were inflicted on the victim and (2) that the defendant committed the offense against the victim to gratify his desire for pleasure or excitement. See Tenn. Code Ann. §§ 40-35-114(6), (7).

### A. Standard of Review

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Id.

### B. Summary of Sentencing Hearing Facts and the Trial Court's Findings

Moving more specifically to the facts of this case, the defendant received a sentence of ten years for his aggravated sexual battery conviction and twenty-three years for his rape of a child conviction. As mentioned previously, these sentences were then set to run concurrently resulting in an effective sentence of twenty-three years.

At the sentencing hearing for the defendant, the State presented testimony from the victim's mother. Within her account this witness provided information concerning the prior molestation at the foster home. She also stated that when the defendant had originally come to Kentucky to visit the victim, she and her husband sat down with the defendant and told him about the previous abuse.

They further disclosed other activities of a sexual nature in which the victim had engaged including the incident with the victim's step-brother. Moreover, the mother stated that she had told the defendant that T. E. was very sensitive and confused. When asked by the prosecution about how T. E. was doing after the events forming the basis for these charges, the witness indicated that the victim was drinking; being very promiscuous; having difficulty trusting others, including her step-father; etc. In sum, the mother stated that the victim seemed intent on "destroy[ing] her own life." On cross-examination, this witness admitted that while she had received a significant amount of counseling, she had no degree in psychiatry or counseling. Additionally, she essentially agreed that she was not "qualified to make an assessment on psychological issues." During her testimony this witness also revealed that T. E. has received minimal professional counseling after the abuse by her father because the victim does not want to discuss it.

In presenting his proof, the defendant called four witnesses. One of these individuals testified that the defendant had been his employee and that he had trusted the defendant with his business. This witness further stated that the defendant had been quite reliable and had a good reputation in the community. The second witness stated that he had worked with the defendant at an earlier job and found him to be both trustworthy and industrious. The third gentleman indicated that he had known the defendant for six years and "would be proud to call [the defendant his] brother." Finally, the defense called the defendant's fiancee, Debbie Riesen, who indicated that she still intended to marry the defendant and had been with him through both trials.

Beyond these witnesses the pre-sentence report and the victim impact statement were submitted for the trial court's review. Subsequently, the trial court heard arguments from both sides before announcing the defendant's sentences and the rationale allegedly supporting them.

In arriving at the sentences imposed, the trial court found applicable one mitigating factor and three enhancement factors. The former involved the defendant's having "been a law-abiding citizen", been gainfully employed throughout his life, and been trusted by his neighbors, co-workers, and employers. See Tenn. Code Ann. § 40-35-113(13). Regarding enhancement, the trial court found the aforementioned challenged factors applicable along with the fact that the defendant had abused a position of trust by committing these offenses against his child. See Tenn. Code Ann. § 40-35-114(15). In assigning weight to the enhancement factors, the lower court clearly stated that it placed little emphasis on its finding that the crimes had been committed to satisfy the defendant's desire for pleasure and excitement. It thereafter imposed the ten- and twenty-three-year concurrent sentences.

## C. Particularly Great Injuries Suffered by the Victim

With this background we first consider whether the trial court incorrectly imposed enhancement factor (6), that the injuries suffered by the victim were particularly great. Citing caselaw, the defendant asserts that expert testimony is necessary to support the utilization of this factor with regard to emotional injury. See, e.g., State v. Spratt, 31 S.W.3d 587, 608 (Tenn. Crim. App. 2000). The State concedes that such proof is necessary but contends that T. E.'s mother qualified as an expert on the emotional state of her daughter.

However, in State v. Arnett, 49 S.W.3d 250 (Tenn. 2001), a decision filed after the briefing and oral arguments in this case, the Tennessee Supreme Court clearly stated that while expert

testimony may be helpful to prove the existence of this factor it is not a prerequisite for the application of this factor in sentencing. See id. at 260. More specifically, our supreme court held

> that application of this factor is appropriate where there is specific and objective evidence demonstrating how the victim's mental injury is more serious or more severe than that which normally results from this offense. Such proof may be presented by the victim's own testimony, as well as the testimony of witnesses acquainted with the victim.

Id. The supreme court further provided:

> Specific, objective examples . . . of the disabling effects of the victim's mental injury obviate the need for expert proof. On the other hand, where the State does not offer specific evidence of the victim's "particularly serious" injuries, the trial court will not be justified in applying the enhancement factor to increase a defendant's sentence. State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996); see, e.g., State v. Melvin, 913 S.W.2d 195, 203-04 (Tenn. Crim. App. 1995) (rejecting application of this factor where the mother of the victim testified that the victim was "highly nervous," and where the victim refused to undergo a physical examination and psychological counseling, testifying that she can "deal with it . . . [and] can block things out if [she doesn't] want to remember").

Id. at 261.

Beyond this guidance, Arnett does not indicate how courts are to determine the typical emotional/mental injuries associated with any given crime so as to establish a point of comparison for the application of this factor in a particular case. Nevertheless, the supreme court did find the emotional and psychological injuries sustained by the victim in Arnett sufficient to establish the existence of this enhancement factor; thus, the injuries catalogued in that case provide this Court with some guidance as to the propriety of applying factor (6) to the instant case.

In Arnett, the supreme court noted the extensive counseling undertaken by the victim and "her need for prescription medication." [9] Id. at 261. The trial court had observed that both the counseling and medication were necessary for the victim to function daily and to overcome her fear of another attack. Id.

From the victim impact statement in the instant case, we observe that the victim indicates that she is distrustful and fearful of older men because of the defendant's actions. As noted above, T. E.'s mother confirmed that the victim experiences difficulties trusting others, even including T. E.'s step-father. The victim further states that she cannot express her feelings in any other manner than by crying and that she cannot fully provide a written explanation of how her father's abuse has hurt her. Again her mother's testimony corroborates the victim's difficulty in expressing and dealing

---

[9] Over a two-year period since the offense, the Arnett victim had "continuous psychological counseling" and took anti-depressants. See Arnett, 49 S.W.3d at 261.

with the defendant's actions as evidenced by the victim's problem in talking to her mother and/or a counselor about the events. The extent to which the victim is torn is made evident by her written statement concerning him: "In the since [sic] of what he done [sic] to me[,] I hate him, but he's my father and I love him because of that." In addition, the proof supports that T. E. is engaging in dangerous behavior such as sexual promiscuity. At the time of sentencing, her mother was aware of six people with whom her daughter had slept within the previous six months.

Unquestionably, T. E. has experienced numerous tragic events in her short life and evidences various emotional scars. Some of her behavior has likely been influenced by incidents other than the offenses at issue here. In her mother's candid estimation, the victim was a confused and sensitive girl when she went to live with her father. However, now the record reflects that T. E. seemingly has no regard for her life. In support of this factor, the trial court found that after the defendant's crimes the victim "no longer cares about herself." The lower court describes her as uncommunicative, somewhat "despondent," engaging in reckless and unnatural sexual behavior, etc., since the offenses occurred. Specific, objective examples of her behavior outlined above help to buttress this claim.

Therefore, while some form of expert testimony may have been helpful, we find the injuries suffered here equally as compelling as those suffered by the victim in Arnett. See id. As such, the record does not reflect an abuse of the trial court's discretion in applying this factor, and this portion of the defendant's issue lacks merit.

## D. Desire for Pleasure or Excitement

We next consider the propriety of the trial court's finding applicable enhancement factor (7), dealing with whether the defendant committed the offenses to gratify his desire for pleasure or excitement. See Tenn. Code Ann. § 40-35-114(7). With respect to the aggravated sexual battery conviction, the State concedes that this factor may not be utilized because it is an element of the offense. We agree that this should not have been a consideration in the imposition of the defendant's ten-year sentence. See, e.g., Kissinger, 922 S.W.2d at 490. Nevertheless, our supreme court has held that because pleasure or excitement is not an essential element of the offense of rape, Tennessee Code Annotated section 40-35-114(7) may be used to enhance a defendant's sentence for such offense. See, e.g., id. at 489.[10]

The State, however, bears the burden of demonstrating that the offender was motivated by a desire for pleasure or excitement. Spratt, 31 S.W.3d at 608. Caselaw has provided that this motivation has been proven when "overt sexual displays were made, such as when a defendant fondled, kissed, or behaved in a sexual manner, or when the perpetrator acted while making sexually explicit remarks." State v.Williams, 920 S.W.2d 247, 260 (Tenn. Crim. App. 1995); see also, e.g., Arnett, 49 S.W.3d at 262; State v. Michael Anderson Peek, No. E1998-00038-CCA-R3-CD, 2000 WL 565129, at *27 (Tenn. Crim. App. at Knoxville, May 3, 2000).

In deciding that this factor applied here, the trial court observed "that there had been conduct of a sexual nature" occurring over a period of time leading up to the night of the instant offenses.

---

[10] Though Kissinger only specifically addresses rape and aggravated rape, the same reasoning applies to rape of a child. See Tenn. Code Ann. §§ 39-13-501,-502,-503,-522.

The trial court thereafter concluded that the only reasonable inference to be drawn from such conduct was that the acts were "done for the purpose of pleasure or excitement."

As above-outlined, the State had presented proof at trial that the defendant had been french-kissing his daughter over a period of time. On the night of the offenses, the defendant once more leaned over and began french-kissing T. E. After returning from the bathroom, the defendant removed the victim's shorts and panties. He pulled her night shirt up around her neck and began rubbing her breasts. He then fondled his daughter between her legs before penetrating her digitally and moving his fingers in a circular manner. Furthermore, while this was not the act which the prosecution elected to submit to the jury, the victim also testified that the defendant proceeded to penetrate her vagina with his penis, moving up and down and sideways while doing so. These overt sexual displays support the use of enhancement factor (7) here.

We also observe that the defense understandably did not challenge the jury's determination that the touching supporting the aggravated sexual battery could "be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6); see also Tenn. Code Ann. § 39-13-504(a). This was a rational conclusion supported by the facts presented. As such, the trial court could and did logically infer that the accompanying rape was motivated by the same desire. When considered in the aggregate, the evidence does not point to an abuse of discretion involving the sentencing court's use of this enhancement factor.

Therefore, the defendant's contention concerning the improper use of enhancement factor (7) has merit with respect to his aggravated sexual battery conviction. However, we find that the defendant's challenge to the trial court's utilizing this factor in determining his sentence for the child rape conviction is meritless.

Because the trial court did err in applying Tennessee Code Annotated section 40-35-114(7) to the defendant's aggravated sexual battery conviction, we address whether the sentence imposed is likewise improper. Aggravated sexual battery is a class B felony, and the defendant unquestionably falls within the range of eight to twelve years based upon his prior record or the lack thereof. See Tenn. Code Ann. § 40-35-112(a)(2). With this in mind, we are to then balance the enhancing and mitigating factors. To do so, we must begin at the presumptive minimum sentence and enhance the sentence within the range for existing enhancement factors then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to "each factor is left to the trial court's discretion" as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.

Upon reviewing the facts presented, we find enhancement factors (6) and (15) and mitigating factor (13) appropriate. Furthermore, we conclude that the violation of the abuse of a position of private trust here should carry great weight. See Tenn. Code Ann. § 40-35-114(15). This defendant re-entered his biological daughter's life; was made aware of her troubled history; and then subjected

-10-

her to further abuse. A sentence two years above the minimum is supported by the balance of factors presented in the record before us.[11]

## Correction of Errors in the Judgment Form

Though this matter was not raised, we have observed an error in the rape of a child judgment form which requires correction. In the "Special Condition" portion of the form is written: "PURSUANT TO T.C.A. 40-35-501 (i) THE DEFENDANT WAS ADVISED CONCERNING THE RELEASE ELIGIBILITY PERCENTAGE OF THE OFFENSE CONVICTED SHALL BE 100% OF THE SENTENCE IMPOSED LESS SENTENCE CREDITS EARNED; HOWEVER, NO SENTENCE REDUCTION CREDITS AUTHORIZED SHALL EXCEED 15%." This phrasing leaves the impression that the defendant may receive some reduction in the time that he is to serve on this charge.

Nevertheless, Tennessee Code Annotated section 39-13-523 states:

> (b) Notwithstanding any other provision of law to the contrary, a multiple rapist or a child rapist, as defined in subsection (a), shall be required to serve the entire sentence imposed by the court undiminished by any sentence reduction credits such person may be eligible for or earn. A multiple rapist or a child rapist shall be permitted to earn any credits for which such person is eligible and such credits may be used for the purpose of increased privileges, reduced security classification, or for any purpose other than the reduction of the sentence imposed by the court.
> (c) The provisions of title 40, chapter 35, part 5, relative to release eligibility status and parole shall not apply to or authorize the release of a multiple rapist or child rapist, as defined in subsection (a), prior to service of the entire sentence imposed by the court.
> (d) Nothing in the provisions of title 41, chapter 1, part 5, shall give either the governor or the board of probation and parole the authority to release or cause the release of a multiple rapist or child rapist, as defined in subsection (a), prior to service of the entire sentence imposed by the court.

Tenn. Code Ann. § 39-13-523(b), (c), (d). While Tennessee Code Annotated section 40-35-501(i)(1) and (2) seem to allow a reduction, the provision immediately following states: "Nothing in this subsection shall be construed as affecting, amending or altering the provisions of § 39-13-523, which requires child rapists and multiple rapists to serve the entire sentence imposed by the court undiminished by any sentence reduction credits." Tenn. Code Ann. § 40-35-501(i)(3); but see Tenn. Code Ann. § 40-35-501(i)(1), (2). Thus, though we do not understand the rationale for listing rape

---

[11] We also affirm the twenty-three-year sentence received by the defendant for the rape of a child. Since this offense is an A felony, the starting point for sentencing determinations is the middle of the range. See Tenn. Code Ann. § 40-35-210(c). As above-noted, the defendant would be a Range I offender; thus, a twenty-year sentence is the mid-point against which the trial court was to balance any mitigating and enhancement factors. Because we found no error in the enhancement factors utilized by the trial court and, again, as the abuse of the position of private trust was so egregious in this case, the record supports the sentence imposed by the trial court.

of a child among the offenses in Tennessee Code Annotated section 40-35-501(i)(2), the aforementioned provisions of the Code specifically indicate that a convicted child rapist is not to receive any reduction in his or her sentence. See Tenn. Code Ann. §§ 39-13-523 and 40-35-501(i)(3). We, therefore, remand this matter for entry of a corrected judgment form reflecting that, pursuant to Tennessee Code Annotated section 39-13-523, the defendant's sentence is to be served at one hundred percent without the possibility of a reduction in time.

## **Conclusion**

For the foregoing reasons we find that the defendant's issues do not merit relief. Accordingly, the judgment of the trial court is AFFIRMED. However, the case is REMANDED for correction of the rape of a child judgment form.

_____
JERRY L. SMITH, JUDGE

-12-