# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 15, 2003 Session

### STATE OF TENNESSEE v. STEVEN PAUL DESKINS

**Direct Appeal from the Criminal Court for Davidson County
No. 2001-B-909     Steve R. Dozier, Judge**

---

**No. M2002-01808-CCA-R3-CD - Filed August 14, 2003**

---

A Davidson County jury convicted the defendant, Steven Paul Deskins, of seven counts of rape of a child and four counts of aggravated sexual battery. The trial court imposed an effective seventy-year sentence. In this appeal, the defendant challenges: (1) the sufficiency of the evidence supporting his convictions; (2) the admissibility of evidence indicating the defendant married his wife when she was seventeen years old; (3) the admissibility of evidence regarding statements the defendant made to his wife during sexual intercourse which were similar to statements allegedly made to the victim; and (4) the imposition of consecutive sentences for three of the convictions. We reverse one of the aggravated sexual battery convictions as being in violation of due process and double jeopardy. Otherwise, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court
Affirmed in Part; Reversed in Part**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Jennifer Lynn Thompson, Nashville, Tennessee, for the appellant, Steven Paul Deskins.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bernard F. McEvoy and Angelita Blackshear Dalton, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant's daughter, A.D.,[1] who was twelve years old at the time of trial, testified the defendant began to sexually abuse her during the 1999-2000 school year when she was in the fourth grade. The proof showed the abuse continued until February 2001. According to A.D., the abuse

---

[1] It is the practice of this court to refer to juvenile victims of sexual abuse by their initials.

involved numerous incidents of anal intercourse, vaginal intercourse, digital penetration, oral sex, and other acts of sexual contact. The jury convicted the defendant of seven counts of rape of a child and four counts of aggravated sexual battery. The trial court imposed an effective seventy-year sentence.

A.D. testified that while she was suspended from school during the fifth grade, the defendant took her into his bedroom, took off her clothes, placed her on her hands and knees, and performed anal intercourse. A.D. testified the defendant told her to "relax." She stated he then told her to "flip over," and he performed vaginal intercourse. She further indicated that "gooey stuff" came out of the defendant's penis. She testified the defendant then got off the bed, made her touch his penis, and then made her perform oral sex on him. She also said he squeezed her breasts while she performed oral sex on him.

A.D. testified that during her fourth grade year while her mother was on a trip to Florida, the defendant called her into his bedroom, forced her to engage in anal intercourse, and then made her touch his penis. She further stated the defendant performed vaginal intercourse.

The victim then testified to a third incident which occurred while the family was visiting her grandmother. The victim indicated that during the visit, she and the defendant returned home to retrieve something the family had forgotten. She said that when they arrived at their home, the defendant made her engage in anal intercourse. She also stated he touched her vagina and penetrated it with his finger. She recalled that the defendant told her to "relax" during the incident.

A.D. recounted another occasion during which the defendant woke her and made her watch a pornographic movie while her mother and brother were asleep. A.D. testified the defendant instructed her not to tell anyone about the sexual abuse because he would "get in trouble" and "go to jail." She eventually reported the abuse to a relative.

Catherine Deskins, the defendant's wife and the victim's mother, testified she and the defendant had been married nearly thirteen years at the time of trial. She said they married when she was seventeen years old and the defendant was thirty years old. She stated the defendant was the father of both of her children, the twelve-year-old victim and a ten-year-old son. She testified the defendant consumed alcohol on a daily basis. She confirmed that during the spring of 2000, she went on a trip to Florida while the defendant and the children remained at home. She further testified that during the victim's school suspension, the victim wanted to go with her to work rather than stay at home with the defendant. She stated the victim had significant behavioral problems in the fourth and fifth grades.

The victim's ten-year-old brother, the defendant's son, testified that two to four times per week, while he and the victim were home with the defendant after school, the defendant asked the victim to join him in the bedroom, where she would remain for ten to twenty minutes. He testified the victim sometimes seemed unhappy when she left the bedroom.

Detective Harry Meek of the Metropolitan Nashville Police Department testified regarding his interview with the defendant. In the recorded interview, which was played for the jury, the

defendant initially said, "To my knowledge, I haven't done anything." The defendant later stated he did not remember having sex with the victim; it "could have happened"; he "couldn't swear" he did not have sex with the victim; and there had been times he could not remember having sex with his wife. The defendant then indicated it was possible the sexual abuse occurred while he was intoxicated or asleep. Detective Meek stated that two hours after the interview, the defendant telephoned him and wanted to know how long it would take to reunite his family if he admitted to the allegations.

Hollye Gallion, a nurse practitioner with Our Kids Center in Nashville, testified she examined A.D. on February 23, 2001, for diagnosis and treatment. The victim relayed to her the various acts of sexual abuse by the defendant. Gallion stated that A.D. was nearing adulthood physically; however, she appeared to be developmentally delayed and did not function at her age level. Gallion said she observed a deep "notch" in A.D.'s hymen which may or may not have been an injury caused by penetration. She indicated A.D.'s anal examination was normal. She testified it was possible for an adult male to engage in vaginal or anal intercourse with a child without causing detectable injury to the child.

Lisa Dupree, a counselor and social worker with Our Kids Center, also interviewed A.D. to obtain her history in preparation for Gallion's physical examination. She testified A.D. said the defendant "had been doing stuff," that "he put his private in her private," and that "this happened more than one time." Dupree stated the victim said the last incident of abuse occurred recently. According to Dupree, the victim also described another incident that occurred while her mother was on a trip. Dupree said the victim described ejaculation and reported both penile-rectal contact and penile-oral contact.

The State called Sherry Goodwin, an investigator for the Department of Children's Services, to testify in light of the defendant's attack upon the credibility of the victim. She testified that she interviewed the victim on February 23, 2001. Goodwin stated the victim reported that the defendant began sexually abusing her approximately two years earlier. Goodwin said A.D. told her the defendant put his penis in her vaginal area, her "bottom," and her mouth. Goodwin recalled the victim also said the defendant touched her breasts. She said A.D. also described semen. Goodwin testified the victim said the defendant told her not to report the abuse because he would get in trouble. According to Goodwin, the victim said the last incident occurred during the week before the interview.

Martha Jane Maxwell, A.D.'s fourth grade teacher, testified A.D. was a special education student who functioned at least two grade levels below other students her age. Maxwell stated that at the beginning of the school year, the victim was very affectionate and greeted her with a "bear hug" every morning. However, during the middle of the school year, she began to notice changes in A.D.'s behavior. Maxwell said A.D. appeared to be unhappy, cried, and began to rub her body against boys in the classroom. She was so concerned that she reported this to school officials and to the defendant and his wife. She suggested to the defendant and his wife to "possibly take her maybe for a physical to see if there was something going on."

Dr. Joseph LaBarbera, a clinical psychologist, testified for the defendant that he evaluated the victim on February 14, 2001, and diagnosed her as having attention deficit disorder, major depression, and psychotic features. He explained that due to these "psychotic features," the victim had difficulty perceiving situations accurately. However, he opined the victim was not delusional. He also said prior testing showed the victim had an IQ of approximately seventy or eighty. On cross-examination, Dr. LaBarbera acknowledged that he was unaware of any prior sexual abuse and agreed that prior sexual abuse could cause or contribute to psychological problems.

Tammy Ramsey, a school psychologist, testified for the defendant. She diagnosed the victim as emotionally disturbed. She recounted the victim's statement that her deceased grandmother came on her bus and her grandmother's voice spoke to her. Ramsey also confirmed the victim was suspended from school for twelve days from February 16 to March 5, 2001.

At the conclusion of the State's case, the trial court called upon the State to make an election of offenses. At that time, the State discussed each count of the indictment and detailed to the jury the time, place, and nature of the act supporting each count of the indictment.

Ultimately, the jury convicted the defendant as charged on each count of the indictment. With regard to Counts 1 through 5 which occurred while the victim was suspended from school, the jury convicted the defendant of one count of child rape for performing anal intercourse; one count of child rape for performing vaginal intercourse; one count of child rape for forcing the victim to perform oral sex on him; one count of aggravated sexual battery for making the victim touch his penis; and one count of aggravated sexual battery for touching the victim's breasts. With regard to Counts 6 through 8 which occurred while the victim's mother was in Florida, the jury convicted the defendant of one count of child rape for performing anal intercourse; one count of child rape for performing vaginal intercourse; and one count of aggravated sexual battery for forcing the victim to touch his penis. With regard to Counts 9 through 11 which occurred when the defendant and the victim returned home from her grandmother's house, the jury convicted the defendant of one count of child rape for anal penetration; one count of child rape for digitally penetrating the victim's vagina; and one count of aggravated sexual battery for touching the victim's vagina.

The trial court imposed twenty-three year sentences for five of the child rape convictions, twenty-four year sentences for two of the child rape convictions, and eleven-year sentences for each aggravated sexual battery conviction. It ordered partial consecutive sentencing for an effective sentence of seventy years.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant's first contention is that there was insufficient evidence to support his convictions. More specifically, he argues the victim's testimony was not credible because she had mental and emotional disabilities. He further maintains there was insufficient proof to convict him because the victim's physical examination did not reveal evidence of sexual assault. We do not agree.

-4-

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

In the instant case, the victim recounted three separate occasions in which the defendant committed sexual acts upon her. She first described an incident which occurred while she was suspended from school during the fifth grade. Her testimony clearly indicated the defendant used his penis to penetrate her anus and then her vagina; he placed his penis in her mouth; he then made her touch his penis; and he squeezed her breasts. Next, she described an incident which occurred in the spring of 2000 while her mother was in Florida, during which the defendant performed both anal and vaginal intercourse upon her and forced her to touch his penis. She further described an incident when she and the defendant returned home from her grandmother's house, during which the defendant penetrated her anus with his penis, touched her vagina, and then penetrated her vagina with his finger.

Further, we note that the defendant conceded in his statement to law enforcement that the events in question could have occurred. The victim's brother testified the defendant frequently called the victim into his bedroom for an extended period of time while their mother was not home. We conclude a rational trier of fact presented with the proof in the instant case could have found beyond a reasonable doubt that the defendant was guilty of these offenses. Any issues related to the credibility of the victim's testimony were resolved by the jury in favor of the State and are not subject to review by this court. Sheffield, 676 S.W.2d at 547. We further note that the failure of the physical examination to yield conclusive findings of penetration did not preclude the jury's determination that penetration occurred, especially in light of the testimony that the physical findings did not necessarily mean that penetration did not occur.

The defendant specifically contends there was insufficient proof to convict him of child rape as alleged in Count 7 of the indictment and aggravated sexual assault as alleged in Count 8. In Count 7, the State alleged the defendant performed vaginal intercourse on the victim during the spring of 2000 while the victim's mother was in Florida. In Count 8, the State alleged the defendant forced the victim to touch his penis during the same incident. The defendant maintains the victim's testimony is silent regarding the two acts and, therefore, his convictions for these offenses are not supported by the evidence. He also argues that the victim testified the defendant first performed vaginal intercourse upon her during the incident which occurred while she was suspended from school, and that this testimony was inconsistent with his conviction in Count 7.

The victim testified that while her mother was in Florida, the defendant "put his front private part in my front private part and he put his front private part in my back private part." The victim indicated she used the words "private section" to refer to the vaginal area and "back private section" to refer to the buttocks. This proof was sufficient evidence to support the jury's verdict that the

defendant was guilty of child rape by vaginal intercourse as alleged in Count 7. Further, the victim testified that during the same incident, the defendant made her touch "his private section," or penis, with her hands. Given the entirety of the victim's testimony, the jury could have reasonably concluded the victim became confused with regard to time when she testified the defendant did not perform vaginal intercourse until the later incident. The defendant's argument that the record is silent regarding these offenses is without merit. We conclude the record contains sufficient proof to support all of the defendant's convictions.

In reviewing the record before us, there is an issue as to whether some of the defendant's convictions violate due process and/or double jeopardy. However, because this issue was not raised on appeal, we cannot address it unless we first find plain error.

An error which has affected the substantial rights of a defendant may be noticed at any time in the discretion of the appellate court where necessary to do substantial justice. State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). "Plain error" or "fundamental error" is recognized under Tennessee Rule of Criminal Procedure 52(b). State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). Dual convictions resulting in a violation of a defendant's protection against double jeopardy constitute plain error. State v. Robert Wayne Herron, No. M2002-00951-CCA-R3-CD, 2003 WL 151201, at *5 (Tenn. Crim. App. Jan. 22, 2003, at Nashville), perm. to appeal denied (Tenn. 2003).

Based upon our review of the record, we conclude the defendant's dual convictions for rape of a child by digital penetration of the victim's vagina as alleged in Count 10 and aggravated sexual battery by touching the victim's vagina during the same incident as alleged in Count 11 violate both due process and double jeopardy. The basis for the defendant's convictions in Counts 10 and 11 was the victim's testimony that the defendant touched her vagina with his hands and inserted his finger into her vagina. Her testimony established that the touching of the "outside" of the victim's vagina occurred at the same time the defendant inserted his finger into her vagina. There was no intervening event between the acts, and the defendant's intent was the same. Therefore, we conclude the dual convictions violate due process. See State v. Barney, 986 S.W.2d 545, 548-49 (Tenn. 1999) (holding due process analysis for sexual offenses requires consideration of temporal proximity, spatial proximity, intervening events, sequence of the acts, and the defendant's intent). Further, we note that the two acts were similar in nature and involved the same area of the victim's body. Given all of the facts, we are forced to conclude the dual convictions also violate double jeopardy. See id. at 549. Therefore, we hold that the defendant's conviction on Count 11 for aggravated sexual battery must be reversed.

We have also examined the defendant's other convictions to ascertain whether the tests set forth in Barney require a reversal. See id. at 548-49. We conclude that none of the other convictions violate due process or double jeopardy.

## II. Evidence Inferring the Defendant Previously Committed Statutory Rape

Catherine Deskins testified the defendant was the victim's father, and that the victim was twelve years old. Subsequently, she testified she and the defendant had been married thirteen years, and she married when she was seventeen years old and the defendant was thirty years old. The

defendant objected to evidence of Catherine Deskins' age at the time of her marriage to the defendant. He argued the jury could extrapolate from such evidence that the defendant committed statutory rape since the evidence showed Catherine Deskins was pregnant with the victim, the defendant's child, when they married. The defendant maintains the evidence was inadmissible as a prior bad act. The trial court overruled the objection.

Tennessee Rule of Evidence 401, which governs the initial issue of admissibility, requires the trial court to first determine whether the proffered evidence is relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

If the trial court determines the evidence is relevant, the court must then weigh the probative value of the evidence against its prejudicial effect. Tenn. R. Evid. 403. However, if such evidence consists of "other crimes, wrongs, or acts" reflecting upon the defendant's character, the trial court should follow the procedures provided in Tennessee Rule of Evidence 404(b). State v. James, 81 S.W.3d 751, 758 (Tenn. 2002); State v. DuBose, 953 S.W.2d 649, 655 (Tenn. 1997). Our standard of review of the trial court's determinations under Tennessee Rule of Evidence 404(b) is whether the trial court's ruling was an abuse of discretion. DuBose, 953 S.W.2d at 652.

Here, the State only asked how long the witness had been married and how old she was when she married. The State did not ask if she was pregnant at the time of her marriage. Although it is possible the jury could have extrapolated from the testimony that the mother was pregnant at the time of her marriage and thereby the defendant committed statutory rape, there is no indication this was the State's intent. Further, the State never argued this point to the jury. We discern no prejudice to the defendant. This issue lacks merit.

### III. Evidence of Defendant's Comments to His Wife During Sexual Intercourse

Catherine Deskins testified that when she and the defendant would engage in anal intercourse, the defendant would instruct her to "relax." The defendant contends the trial court erred in admitting the testimony over his objection because the evidence was inadmissible character evidence under Tennessee Rule of Evidence 404(b). However, we note the evidence was not being presented to prove the defendant's character or a character trait. Instead, the testimony concerned a habit of the defendant and, therefore, was governed by Tennessee Rule of Evidence 406.

"A habit is a regular response to a repeated specific situation." Tenn. R. Evid. 406(b). Evidence of a person's habit is relevant to prove that the conduct of the person conformed with the habit or routine practice. Tenn. R. Evid. 406(a). Therefore, Catherine Deskins' testimony concerning the defendant's habit of telling her to "relax" during anal intercourse was relevant evidence in view of the victim's testimony that the defendant told her to "relax" as he performed these same acts upon her. We are unable to conclude the trial court abused its discretion by admitting this evidence. See State v. Kennedy, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999) (holding the admissibility of evidence is generally left to the discretion of the trial court). Regardless, even if the trial court erred in admitting the evidence, the error was harmless. See Tenn. R. App. P. 36(b).

## IV. Consecutive Sentencing

The defendant argues the trial court erred in imposing consecutive sentences for three of the convictions. The trial court imposed twenty-three-year sentences for five of the child rape convictions, twenty-four-year sentences for two of the child rape convictions, and eleven-year sentences for all four aggravated sexual battery convictions. The trial court ran two of the twenty-three-year sentences and one of the twenty-four-year sentences consecutively with all other sentences running concurrently, for an effective sentence of seventy years. We discern no error in sentencing.

An appellate court's review of a challenged sentence is *de novo* on the record with a presumption the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon the trial court's consideration of the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). The defendant bears the burden of establishing the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. When the trial court follows the statutory sentencing procedure and gives due consideration and proper weight to the factors and principles relevant to sentencing, this court may not disturb the sentence. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The trial court found consecutive sentencing was proper under Tennessee Code Annotated section 40-35-115(b)(5), which provides the court may impose consecutive sentencing if it finds by a preponderance of the evidence that

> [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

The defendant maintains the trial court improperly used the same factors to both enhance the his sentences and to impose consecutive sentencing. However, the Sentencing Act does not prohibit the courts from using the same facts and circumstances to both enhance sentences and require them to be served consecutively. State v. Melvin, 913 S.W.2d 195, 205 (Tenn. Crim. App. 1995). Therefore, this argument is without merit.

The defendant further contends the facts and circumstances of this case do not support the imposition of consecutive sentencing under Tennessee Code Annotated section 40-35-115(b)(5). However, we conclude the record supports the trial court's determination. The proof established the defendant's sexual abuse of his own daughter went undetected for almost two years. According to the victim's testimony and her statements to other witnesses, she indicated that abuse included numerous incidents of both anal and vaginal intercourse, digital penetration, oral sex, and other sexual contact.

The victim testified that during the abuse, she was thinking, "When would this ever stop?" and "Please stop." She stated "[i]t hurt" and "[f]elt like needles" when the defendant performed anal intercourse. She said the abuse made her feel as though she was doing something wrong. Witnesses testified about the extreme changes in the victim's behavior which corresponded with the start of the abuse. According to the victim's fourth grade teacher, the victim changed from a hard-working, affectionate child to a child who often cried, appeared to be unhappy, and who engaged in "disturbing" behavior such as rubbing herself against male students. Catherine Deskins also testified her daughter's behavior changed dramatically during the fourth grade. She said the victim became rebellious, started fighting, threw temper tantrums, refused to do her school work, and was suspended from school for possessing sleeping pills and soliciting sex from another student. This proof indicates the offenses committed by her own father caused the victim to suffer significant emotional damage.

We conclude, based on the facts and circumstances as shown by the record before us, the trial court did not err in imposing partial consecutive sentencing.

## CONCLUSION

The evidence in the record was sufficient to support the defendant's convictions. However, we reverse and dismiss the conviction in Count 11 for aggravated sexual battery. We further conclude the defendant suffered no prejudice as the result of the trial court's evidentiary rulings, and the defendant was properly sentenced. Accordingly, we affirm the judgments of the trial court with the exception of the conviction in Count 11 for aggravated sexual battery.

_____
ALAN E. GLENN, JUDGE