IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 21, 2024

## STATE OF TENNESSEE v. BRANDON FRANCIS

**Appeal from the Circuit Court for Rutherford County**
**No. 86325, 84090    Howard W. Wilson, Chancellor**

_____

**No. M2022-01777-CCA-R3-CD**

_____

The Defendant, Brandon Francis, pled guilty to the offenses of aggravated assault and possession of a handgun by a convicted felon. After a hearing, the trial court sentenced the Defendant to an effective sentence of ten years to be served in custody. On appeal, the Defendant challenges both the length of the sentence and the manner of its service. Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which MATTHEW J. WILSON, J., joined. JAMES CURWOOD WITT, JR., J., not participating.[1]

Heather G. Parker (on appeal), Murfreesboro, Tennessee; and Eileen M. Parrish (at sentencing), Nashville, Tennessee, for the appellant, Brandon Francis.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Sarah N. Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]     The Honorable James Curwood Witt, Jr., passed away on August 17, 2024, and did not participate in the filing of this opinion. We acknowledge his twenty-seven years of dedicated and faithful service to this court, both as a former presiding judge and as its longest-serving member.

# OPINION

## FACTUAL BACKGROUND

### A.    THE DEFENDANT'S CRIMES

Prior to the events giving rise to this case, the Defendant and the victim were in a turbulent relationship involving several violent incidents that required law enforcement intervention.  By July 2020, their romantic relationship had ended.  However, while the victim was on a date on July 3, 2020, the Defendant made multiple unanswered phone calls to her.  In a subsequent voicemail, the Defendant claimed to have been robbed.  The victim returned his call out of concern for his safety, but the Defendant abruptly hung up.

Later that evening, the victim was awakened in her two-story apartment by the Defendant attempting to gain entry.  After the victim opened the door, the Defendant forcibly entered the apartment, assaulted her, and threw her to the ground.  The Defendant then revealed a firearm concealed in his shorts, which he briefly dropped before retrieving it and aiming at the victim.

While the victim raised her hands in a defensive posture, the Defendant discharged the weapon, striking her in the hand, breast, and chest.  After panicking, the Defendant retrieved a towel for the victim and called 911.  The Defendant told the dispatcher that the victim had been accidentally shot in the hand and that the gun was still at the scene.  He left the victim bleeding on the floor.

Law enforcement officers and medical personnel soon arrived to help her.  The victim told officers that the Defendant had shot her, but they did not recover the weapon.  She was then transported to Vanderbilt University Medical Center, where she had surgery and stayed for approximately one month.

After the surgery, the victim was placed on a respirator for a few days.  The bullet had struck her colon, kidney, ureter, an artery, and then finally lodged in her spine.  The bullet remained in her spine, and the victim had several post-surgery complications that required her to have multiple follow-up surgeries and procedures.

### B.    THE DEFENDANT'S PLEA AND SENTENCING HEARING

On October 6, 2020, a Rutherford County grand jury charged the Defendant with, among other crimes, aggravated assault resulting in serious bodily injury and unlawful

possession of a handgun by a convicted felon. *See* Tenn. Code Ann. §§ 39-13-102(a)(1)(A)(i); 39-17-1307(c). On April 12, 2022, the Defendant entered a best interest plea to both charges. He agreed to plead guilty as a Range II, multiple offender and to allow the trial court to determine the length of the sentences and the manner of their service.

The trial court held a sentencing hearing on September 28, 2022. At the hearing, the trial court heard from the victim, her mother, the Defendant's community corrections supervisor, and the Defendant's mother.

The victim testified as to the events that occurred in July 2020. She also testified to the nature of her relationship with the Defendant, including his previous assaults. The victim said that she was in significant pain for about a month and a half after she was discharged. She could not dress herself, shower, or even use the restroom without help, and her mother assisted with these tasks. The victim said that she used a wheelchair after being released from the hospital and that she suffered emotional trauma from the shooting.

The victim's mother testified about her experience in taking care of the victim, saying that she needed extensive medical care after being shot by the Defendant. The mother said that because she had to do "everything" for the victim for several months, she was required to take time off from her job. She further explained the trauma that her daughter and their family experienced from the shooting.

Amanda Marrow testified that she was the Defendant's community corrections case officer for two years starting in May 2016. She identified at least five occasions when the Defendant was arrested on new charges while participating in the community corrections program. She confirmed that the Defendant consistently failed to report to her and never provided proof of employment. She ultimately opined that the Defendant would not be a suitable candidate for alternative sentencing.

The Defendant's mother, Rebecca Prather, testified that the Defendant was diagnosed with ADHD when he was six years old. She further testified that the Defendant had an extremely tumultuous childhood through no fault of his own. According to Ms. Prather, the Defendant's father took him to the Virgin Islands at a young age, where he was forced to stay until he could escape to his mother's care at fifteen years old. She also stated that the Defendant had two young children.

Ms. Prather stated that the Defendant would cooperate with probation to support his family financially. She also shared that the Defendant had started working in a construction job while he was out on bond. Although Ms. Prather admitted that the Defendant had been using marijuana, she was not knowledgeable about the nature or extent of his prior criminal activity.

Finally, the Defendant addressed the court through an allocution. He asserted that he was behaving appropriately in jail, understood that he had made past mistakes, and asked the court to allow him to continue to provide for his children. The Defendant claimed that the shooting was an accident that had harmed him as well.

## C.    THE TRIAL COURT'S SENTENCE

After the testimony and arguments, the trial court explained its considerations before imposing the sentence. The court stated that it had considered the evidence and arguments presented during the hearings, the Defendant's allocution, the pre-sentence report, the principles of sentencing, statistical information from the Administrative Office of the Courts as to sentencing practices for similar offenses, and the nature and characteristics of the criminal conduct involved.

Additionally, the trial court analyzed possible enhancement and mitigating factors. The court applied five enhancement factors: that the defendant had a previous history of criminal convictions or criminal behavior; that the personal injuries inflicted upon the victim were particularly great; that the Defendant had multiple previous violations while on pretrial release and probation; that the Defendant's lack of hesitation to commit a crime when the risk to human life was high; and that the Defendant was on probation at the time of the offense. *See* Tenn. Code Ann. § 40-35-114(1), (6), (8), (10), (13) (2019). The court found that there were no applicable mitigating factors.

The trial court sentenced the Defendant to serve ten years for the aggravated assault conviction and four years for the firearm conviction. It ordered that the sentences be aligned concurrently for an effective sentence of ten years.

Finally, the trial court considered how the sentence would be served. The court considered the Defendant's time in pretrial custody, his social history, and his tumultuous childhood. The court expressed concern about the circumstances of the offense and placed significance on the Defendant's prior criminal history and numerous violations while on probation in other cases. Finally, it found that the Defendant's lack of remorse in his allocution showed a lack of potential for rehabilitation. The trial court ordered that the sentences be served in confinement after concluding that lesser measures had been applied unsuccessfully and that full probation would unduly depreciate the seriousness of the offenses.

The Defendant filed a *pro se*, untimely notice of appeal on December 20, 2022. However, this court waived the timely filing requirement for the notice of appeal and accepted jurisdiction of the case.

4

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). As we discuss below, the Defendant effectively raises two issues in this case: whether the trial court should have imposed a sentence less than the maximum sentence and whether the trial court should have imposed an alternative sentence to incarceration.

Both issues relate to sentencing. Our supreme court has recognized that we review a trial court's sentencing determinations for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). As such, this court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out" in the Sentencing Act. *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). This standard of appellate review also applies to a trial court's decision to grant or deny alternative sentencing. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012).

In each of these contexts, "this deferential standard of review is subject to an important caveat: the trial court must 'place on the record any reason for a particular sentence.'" *State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at *5 (Tenn. Crim. App. Apr. 12, 2023) (quoting *Bise*, 380 S.W.3d at 705), *no perm. app. filed*. After all, "appellate courts cannot properly review a sentence if the trial court fails to articulate in the record its reasons for imposing the sentence." *Bise*, 380 S.W.3d at 706 n.41.

Presumably because the trial court imposed concurrent sentences, the Defendant's brief focuses only on the propriety of his ten-year sentence. As a Range II, multiple offender convicted of a Class C felony, the Defendant faced a sentencing range of between six and ten years. *See* Tenn. Code Ann. § 40-35-112(b)(3) (2019). The trial court's sentence of ten years, therefore, was within the applicable sentencing range. Moreover, the court expressly considered the purposes and principles of sentencing, possible enhancement and mitigating factors, and the common-law factors applicable to determinations of alternative sentencing. As such, we accord a presumption of reasonableness to the trial court's sentencing decisions and review those decisions for an abuse of discretion.

## ANALYSIS

In his brief, the Defendant identifies a single issue presented: "Whether the trial court abused its discretion in sentencing [the Defendant]." Under this broad and generalized issue, the brief then argues that the sentence is more severe than necessary to accomplish the goals of sentencing and that it is greater than deserved for the offense. It also asserts that the sentence is not supported by the factors favoring incarceration in Tennessee Code Annotated section 40-35-103(1)(A)-(C) and that the Defendant has potential for rehabilitation. The State responds that the trial court acted within its broad discretion in imposing a within-range sentence of ten years' incarceration and is entitled to a presumption of reasonableness in its sentencing decisions. We agree with the State.

In the context of his argument, the Defendant's single broad issue essentially challenges both the length of his ten-year sentence and the manner of its service. These are separate sentencing considerations, of course, as they represent separate exercises of a sentencing court's discretion. *See* Tenn. Code Ann. § 40-35-210, Sent'g Comm'n Cmts. ("Having determined the potential span of years available, the court must then impose a specific determinate sentence and, in most instances, ascertain whether a defendant should be incarcerated or whether the defendant should receive full or partial probation."). At least in some cases, a brief that blends its argument on these separate issues may obscure the true grounds argued for relief. For example, some considerations relate more naturally to how the sentence should be served. *See State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998) ("The sentencing considerations generally used in determining the manner of service for both misdemeanors and felony sentences are codified at Tenn. Code Ann. §§ 40-35-102, -103."). Other concerns may have greater relevance to the aggregate length of the sentence imposed, *see* Tenn. Code Ann. §§ 40-35-113; -114; -115; -210(c), (d), while others still may represent overlapping considerations relevant to both issues.

As a note of caution, we emphasize the dangers that a single broad issue statement may pose in identifying the issues presented to the appellate court. *See Trezevant v. Trezevant*, __ S.W.3d __, 2024 WL 3407466, at *3 (Tenn. July 8, 2024) ("[A]n appellant that broadly asserts error in the statement of issues and presents an argument that leaves the opposing party guessing at the issues to which it must respond, or leaves the reviewing court scouring the record for reversible errors, risks having its issues waived."). In this case, however, we recognize that the Defendant's issue and arguments, when taken together, "present the grounds for appellate relief" as to both the length of the sentence and the manner of its service. *Id.* With this context, we address each of the Defendant's sentencing issues in turn.

### A. LENGTH OF SENTENCE

The Defendant first asserts that the trial court abused its discretion by imposing a sentence of ten years, which is the maximum sentence available for a Class C felony conviction as a Range II offender. The Defendant argues that the trial court abused its discretion by ordering a greater sentence than deserved because it ignored testimony that the incident was an accident. In so arguing, he seems to contend that the trial court should not have weighed heavily enhancement factors that "are not directly related to the offense conduct itself." The State responds that the trial court acted within its discretion and that the Defendant's disagreement with the trial court's weighing of enhancement and mitigating factors is not grounds for relief. We agree with the State.

In reaching its decision, a sentencing court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. §§ 40-35-102, -103, -210(b); *see also Bise*, 380 S.W.3d at 697-98. In addition, the sentence imposed "should be no greater than that deserved for the offense committed" and should "be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

Moreover, in establishing the length of a sentence within the applicable range of punishment, a trial court must consider, but is not bound by, the following advisory sentencing guidelines:

(1)     The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2)     The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

7

Tenn. Code Ann. § 40-35-210(c).  In addition, the "sentence length within the range should be consistent with the purposes and principles" of the Sentencing Act.  *Id.* § 40-35-210(d).

Although the trial court must consider applicable enhancement and mitigating factors, these factors are advisory only.  *See Bise*, 380 S.W.3d at 699 n.33, 706.  In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is consistent with the purposes and principles of [the Sentencing Act]."  *Carter*, 254 S.W.3d at 343 (citation and internal quotation marks omitted).  To this end, "[t]he application of a single enhancement factor can justify an enhanced sentence."  *State v. Rollins*, No. E2022-00890-CCA-R3-CD, 2023 WL 4078700, at *5 (Tenn. Crim. App. June 20, 2023) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. Oct. 13, 2023).  Indeed, we have also recognized that "a maximum sentence within the appropriate range, in the total absence of any applicable enhancement factors, and even with the existence of applicable mitigating factors, should be upheld as long as there are reasons consistent with the statutory purposes and principles of sentencing."  *E.g.*, *State v. Chapman*, No. M2011-01670-CCA-R3-CD, 2013 WL 1035726, at *9 (Tenn. Crim. App. Mar. 13, 2013), *no perm. app. filed*.

In this case, the Defendant agrees that all of the enhancement factors the trial court considered are applicable.  For example, he concedes that the trial court properly considered that the victim's injuries were particularly great and that the Defendant "had no hesitation about committing a crime when the risk to human life was high."  *See* Tenn. Code Ann. § 40-35-114 (6), (10).  He also concedes that the trial court could consider the other enhancement factors it found.  *See* Tenn. Code Ann. § 40-35-114(1) (previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"); -114(8) (failure to comply with the conditions of a sentence involving release into the community); -114(13) (commission of a felony offense while released on probation).  Instead, he takes issue with the trial court's weighing of enhancement factors that "are not directly related to the offense conduct itself" and with the trial court's "ignor[ing] the testimony that the shooting was an accident."

As an initial matter, our sentencing law does not contemplate, much less require, that certain enhancement factors inherently "weigh less" than others.  Instead, the weight to be attributed to any particular enhancement factor lies within the sound discretion of the trial court in the context of an individual case and an individual defendant.  *See State v. Moss*, 727 S.W.2d 229, 240 (Tenn. 1986) ("Mitigating and enhancement factors are not assigned any particularized weight or value because each may carry differing degrees of weight depending on all of the circumstances of the defendant and the crime itself.");  *State v. Mickens*, 123 S.W.3d 355, 393 (Tenn. Crim. App. 2003) ("There is no mathematical formula of evaluating the enhancement factors to calculate the appropriate sentence.").  Even more fundamentally, the Defendant's concern about the weight assigned to various types of enhancement factors is misplaced in this court, as the "mere disagreement with

the trial court's weighing of the properly assigned enhancement and mitigating factors is no longer a ground for appeal." *Bise*, 380 S.W.3d at 706.

Moreover, the record does not support the argument that the trial court "ignored" testimony that the assault was "an accident." On the contrary, the record shows that the court considered the testimony and rejected it as not credible. "The trial court, as the trier of fact at sentencing hearings, has the opportunity to observe the manner and the demeanor of witnesses"; therefore, we "will not interfere with the trial court's findings of fact in this regard unless the evidence contained in the record clearly preponderates against these findings." *State v. Melvin*, 913 S.W.2d 195, 202 (Tenn. Crim. App. 1995). Essentially, the Defendant asks us to determine the credibility of the witnesses and weigh the enhancement factors anew. We respectfully decline the invitation. The trial court's decision as to the length of the sentence is within the applicable sentencing range, and it is consistent with the purposes and principles of sentencing. As such, we conclude that the trial court acted within its discretion in imposing a sentence length of ten years for the Range II, Class C felony conviction. *See State v. King*, 432 S.W.3d 316, 321 (Tenn. 2014). The Defendant is not entitled to relief on this ground.

## B.     MANNER OF SERVICE

The Defendant asserts that the trial court abused its discretion by denying his request for an alternative sentence to incarceration, including split confinement. The Defendant claims that the court's ten-year sentence was effectively "throwing the book at [him]" and failed to consider mitigating factors and his amenability to rehabilitation. In response, the State argues that the trial court properly weighed the applicable considerations to the Defendant's case and appropriately found that he was not a suitable candidate for alternative sentencing. We agree with the State.

Of course, "[a]ny sentence that does not involve complete confinement is an alternative sentence." *State v. Crabtree*, No. M2021-01154-CCA-R3-CD, 2023 WL 2133831, at *19 (Tenn. Crim. App. Feb. 21, 2023) (citation omitted), *no perm. app. filed*. "There is no bright line rule for determining when probation should be granted," and "[e]ach sentencing decision necessarily involves a case-by-case analysis." *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000).

"The Sentencing Act encourages trial courts to utilize alternative sentences." *Ray v. Madison Cnty.*, 536 S.W.3d 824, 833 (Tenn. 2017). Nevertheless, pursuant to Tennessee Code Annotated section 40-35-103(1), sentences involving confinement may be ordered if they are based on one or more of the following considerations:

(A)     whether "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct";

(B)     whether "[c]onfinement is necessary to avoid depreciating the seriousness of the offense[,] or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses"; or

(C)     whether "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant."

Our supreme court has also recognized that "[t]he guidelines applicable in determining whether to impose probation are the same factors applicable in determining whether to impose judicial diversion." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (citation and internal quotation marks omitted). To that end, "[w]hen considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public." *State v. Wilbourn*, No. W2022-01199-CCA-R3-CD, 2023 WL 4229352, at \*4 (Tenn. Crim. App. June 28, 2023) (citation and internal quotation marks omitted), *no perm. app. filed*.

The record shows that the Defendant could be considered for an alternative sentence because his crimes were eligible for probation and the trial court imposed a sentence for each crime of ten years or less. Tenn. Code Ann. § 40-35-303(a) (2019). However, because the Defendant was sentenced as a Range II, multiple offender, the law does not consider him to be a favorable candidate for probation. *See* Tenn. Code Ann. § 40-35-102(6)(A) (2019); *State v. Hastings*, No. M2023-00247-CCA-R3-CD, 2024 WL 752994, at \*13 (Tenn. Crim. App. Feb. 23, 2024) ("Range II, multiple offenders are not considered to be favorable candidates for probation or other forms of alternative sentencing."), *no perm. app. filed*. That said, we have recognized that

[e]ven if the court determines that a defendant is not a favorable candidate for an alternative sentence, the court can still impose an alternative sentence on an eligible defendant if the defendant proves that he or she is a suitable candidate for the alternative sentence. Likewise, the court can sentence a favorable candidate, who is eligible for an alternative sentence, to confinement if the defendant fails to prove that he or she is a suitable candidate for an alternative sentence.

*State v. Demoss*, No. M2019-01583-CCA-R3-CD, 2020 WL 4199987, at *8 (Tenn. Crim. App. July 22, 2020) (citing *Carter*, 254 S.W.3d at 347), *perm. app. denied* (Tenn. Nov. 12, 2020).

Importantly, "[t]he primary goal of probation, under the [Sentencing] Act and the decisions of the appellate courts of this state, is [the] rehabilitation of the defendant." *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996); Tenn. Code Ann. § 40-35-103(5) ("The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed."). Our legislature has also recognized that "effective rehabilitation" is often achievable only with the "voluntary cooperation of defendants." Tenn. Code Ann. § 40-35-102(3)(C).

In this case, the trial court ordered that the Defendant's ten-year sentence be served in confinement. In so doing, the court stated that it considered the purposes and principles of sentencing, as well as the sentencing information required to be considered by Tennessee Code Annotated section 40-35-210. It reflected on the facts and circumstances surrounding the offenses and the nature of the criminal conduct involved in the case. The court also weighed the Defendant's criminal history; his history of probation violations; his background, including the presence of childhood trauma; and his potential for rehabilitation. And finally, it considered the Defendant's lack of remorse for the offenses. From these considerations, the court concluded that measures less restrictive than confinement had "frequently or recently been applied unsuccessfully to the defendant" and that full probation would unduly depreciate the seriousness of the offenses. *See* Tenn. Code Ann. § 40-35-103(1)(B), (C).

The Defendant takes issue with these conclusions. He asserts that he has great potential for rehabilitation and argues that a ten-year sentence of confinement is not the "least severe measure necessary to achieve the goals of sentencing." The Defendant also contends that a sentence of full confinement is unnecessary to avoid depreciating the seriousness of this offense. Essentially, the Defendant takes issue with how the trial court weighed the various considerations in imposing a sentence of incarceration.

However, the standard of appellate review is important to our analysis. When reviewing a trial court's decision for an abuse of discretion, we must have "awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). To that end, we may not "second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that [we] would not have chosen." *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019). We also may not substitute our judgment for that of the trial court simply because a party believes that another choice would have been a better decision. *Cf. State v. Willis*, 496 S.W.3d 653, 729 (Tenn. 2016).

Here, the trial court identified the correct standards of law that applied to its consideration of alternative sentencing. It considered and weighed the appropriate statutory and common-law factors and made a reasoned choice between acceptable alternatives after considering the relevant facts on the record. Given his status as a Range II, multiple offender, the law does not consider the Defendant to be a favorable candidate for probation, and the trial court's decision to impose incarceration was neither illogical nor unreasonable. As such, even if reasonable minds could disagree with the propriety of the decision—and we have no such disagreement—we conclude that the trial court acted within its discretion to deny an alternative sentence and impose a sentence of full incarceration. *See Caudle*, 388 S.W.3d at 279. The Defendant is not entitled to relief on this ground.

## CONCLUSION

In summary, we hold that the trial court acted within its discretion in sentencing the Defendant to ten years in confinement. Accordingly, we respectfully affirm the judgments of the trial court.

_____
TOM GREENHOLTZ, JUDGE

12