IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 7, 2019

**STATE OF TENNESSEE v. SHANDEJAH ANDREA STONE**

**Appeal from the Criminal Court for Davidson County**
**No. 2018-A-262     Mark J. Fishburn, Judge**

_____

**No. M2018-01519-CCA-R3-CD**

_____

A Davidson County jury convicted Shandejah Andrea Stone of simple assault. The trial court sentenced Defendant to eleven months and twenty-nine days, with all suspended except ninety days to be served by incarceration. Following release from jail, Defendant is to be on two years of unsupervised probation. On appeal, Defendant argues that her sentence is excessive and that her alternative sentence should not include any period of incarceration. In addition, Defendant asserts as an issue that during the sentencing hearing, the trial court erroneously allowed admission into evidence a Facebook video over objection that the exhibit had not been properly authenticated. After review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

David Von Wiegandt, Nashville, Tennessee, for the appellant, Shandejah Andrea Stone.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Vince Wyatt, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Trial*

Since Defendant does not challenge her conviction, we will summarize the evidence at trial, in the light most favorable to the State, as necessary to address the issues raised by Defendant.

At the time of the assault, Defendant and the victim, Shitia Cotton, had been friends for several years, but had developed animosity toward each other which resulted in angry communications on social media, specifically on Facebook. The assault occurred at approximately 8:30 a.m. on Monday, January 23, 2017, in the parking lot of the childcare business where the victim was employed. The victim had just arrived at work and had parked her car. Defendant, accompanied by a friend, had driven into the parking area just behind the victim. Defendant got out of her car and began attacking the victim as the victim was getting out of her own vehicle. The victim was punched and thrown down on the pavement. Defendant kicked the victim in the face. Defendant's friend filmed the attack. Employees of the childcare came outside and said they were calling the police. Defendant ultimately stopped the attack, and she and her friend left in Defendant's car. When paramedics arrived, the victim was on the ground, bleeding with a cut below one of her eyes. The victim was taken to a nearby hospital and received stitches for the cut. Her eye soon swelled until it was shut. Previously, on Friday, January 20, 2017, Defendant had gone to the childcare and banged doors, yelling for the victim to come outside and fight. The victim stayed inside, and Defendant ultimately left the premises. Both Defendant and the victim were in their mid-to-early twenties in age at the time of the assault.

*Sentencing Hearing*

The victim and Defendant were the only witnesses who testified at the sentencing hearing. In addition to recounting a portion of her trial testimony, the victim testified that she was terminated from her employment following the assault. Her employer took this action because parents of the children became concerned about the children's safety following Defendant's actions on January 20th and 23rd, 2017. The victim was unemployed four months before she again became employed.

The victim indicated that Defendant used Facebook posts to harass the victim multiple times up to the time of the sentencing hearing. In particular, the victim testified about a "Facebook Live" post wherein Defendant appeared to be in Florida where she had moved after the assault. Defendant threatened to get people kicked out of their residences in the housing authority in Nashville, that she was going to "get back" at certain people who had done things to her, and that she is the "M.F.-ing [sic] queen of get-backs."

Defendant objected to the introduction of the Facebook Live video on the basis that its authentication had not been established. Defendant argues that its authentication had to be established by a Facebook representative or by Defendant. Also, Defendant objected on the basis that playing the Facebook Live video was a violation of her rights under the First Amendment to the United States Constitution. It was undisputed at the

sentencing hearing that Defendant was shown on the video speaking what was said. The trial court overruled Defendant's objection, and viewed the Facebook Live video.

Defendant's testimony included her acknowledgement that it was her who appeared in and spoke on the Facebook Live video which had already been admitted into evidence at the sentencing hearing. She testified that some of the things she said in the video were directed at the victim, but not only the victim, but also toward other women.

When asked why she had committed the assault upon the victim, Defendant stated that she had been bullied and provoked by the victim and friends and relatives of the victim. Defendant testified that she has mental health disorders which include being bipolar, depression, and anxiety. She added that she attends counseling sessions for anger management once each week where she resides in Florida.

Other evidence at the sentencing hearing included Defendant's prior conviction for assault in June 2014, for which she was placed on probation. She violated probation, and was ordered to be incarcerated for approximately two weeks and then placed back on probation. She was also convicted of misdemeanor theft in General Sessions Court of Davidson County in October 2014, for an offense committed in April 2014, and she was sentenced to "time served."

In the case sub judice, the trial court found that Defendant had a prior criminal record for convictions, in addition to a probation violation. The trial court found that Defendant had a bond revocation hearing in the present case. The trial court stated there had been new criminal charges against Defendant in which the evidence showed her arrest for the new charges was "warranted." The trial court also found that the nature of the assault for which Defendant was convicted was exacerbated by the fact that Defendant went to the premises of an open childcare business with the clear intent to assault the victim, and she took someone with her to video the attack.

As to alternative sentencing, the trial court commended Defendant for attending counseling, but found that Defendant's efforts had not been successful. The trial court found Defendant still exhibited significant anger issues, and Defendant is "lashing out" and willing to get her vengeance in this case. The trial court, based upon Defendant's tenor and tone of her testimony, concluded that Defendant clearly feels justified in committing the assault on the victim.

After considering its finding and the principles of sentencing, the trial court imposed a sentence of eleven months and twenty-nine days, all suspended except ninety days, with unsupervised probation for two years following release from incarceration.

## ANALYSIS

### *Admissibility of Facebook Video*

On appeal, Defendant argues that the Facebook video was not properly authenticated pursuant to Tennessee Rule of Evidence 901, and therefore the trial court erred by allowing its admission into evidence over Defendant's objection. The record reflects the video showed Defendant in Florida talking about various matters. Defendant's statements in the video contributed to the trial court's factual findings that Defendant continued to exhibit significant anger issues and continued to lash out and is willing to get vengeance in this case. Defendant used an expletive to describe herself as the "queen of get-backs."

Tennessee Rule of Evidence 901 provides in pertinent part that

> **Rule 901. Requirement of Authentication or identification.**– (a) General Provision. – The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims.

Rule 901 provides that, by illustration, one method of authentication or identification of an exhibit which complies with the rule's requirements is the exhibit's "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Tenn. R. Evid. 901(b)(4).

The proponent of the evidence, the State, submitted the evidence as a video recording of Defendant making statements which were relevant to the sentencing considerations which were to be made by the trial court. The trial court had seen Defendant at trial and heard her testimony. The trial court again saw Defendant at the sentencing hearing. The pertinent factual findings made by the trial court, based in part on what it observed in the video, related to what Defendant said in it. Information as to the video having been distributed via any social media, who may have distributed the video, and who may have previously seen it was not necessary for the ultimate use of the video as evidence. The video was thus properly authenticated and Defendant is not entitled to relief on this issue.

### *Defendant's Sentence*

As stated above, the portion of Defendant's sentence relevant to this issue is the incarceration portion of her sentence of split confinement, which is ninety days. Defendant argues that she should have received an alternative sentence that does not include any incarceration. Defendant argues that the trial court inaccurately applied

enhancement factors. The trial court applied as a statutory enhancement factor (1) that Defendant has a prior history of criminal conduct or convictions. T.C.A. § 40-35-114(1). The record clearly shows that application of this enhancement factor was appropriate. The trial court applied factor (8) because of Defendant's probation violation in a prior sentence. *Id*. § 40-35-114(8). Again, the record clearly supports the application of this factor.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). At a sentencing hearing, the trial court, as the trier of fact, listens to the testimony and observes the demeanor of the witnesses. The appellate court gives great weight to the determinations made by the trial court concerning the credibility of witnesses. This Court will not interfere with the trial court's findings unless the record preponderates against them. *State v. Melvin*, 913 S.W.2d 195, 202 (Tenn. Crim. App. 1995).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2017).

While the trial court determined that no mitigating factors applied, on appeal Defendant asserts the following statutory mitigating factors should apply: factor (1), that Defendant's conduct neither caused *nor threatened* serious bodily injury. T.C.A. § 40-35-113(1) (emphasis added). Defendant asserts this applies because the jury, by its

verdict, conclusively found no serious bodily injury or attempt to cause bodily injury. Defendant did not ask the trial court to apply this mitigating factor, and therefore it is raised for the first time on appeal. Even if not waived by Defendant, the trial court was justified by not applying this mitigating factor because it is reasonable to find that whenever a person is kicked in the vicinity of an eye, there is a threat of serious bodily injury to the eye, bones in the face, or even brain injury.

The only mitigating factors suggested by Defendant at the sentencing hearing was that she was provoked by the victim, T.C.A. §40-35-113(2), and that Defendant has made efforts to improve herself by moving away from Davidson County, attending counseling, and addressing her anger management problem. *Id*. T.C.A. § 40-35-113(13). The record clearly supports the trial court's decision to not apply these mitigating factors. Defendant also submits, for the first time in her appeal, that mitigating factor (11) applies, that she, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. T.C.A. § 40-35-113(11). Even if not waived, the record reflects that Defendant drove to the victim's place of work, actually following the victim there and elicited a friend to come along and film the assault, which began as soon as Defendant arrived. This is a classic example of a "sustained intent to violate the law." There is no error in the trial court's decision as to applicability of enhancement factors and its decision that no mitigating factors applied.

Defendant asserts the trial court erroneously relied on deterrence more than rehabilitation and erroneously denied full probation on the basis of Defendant's probation violation in a prior case. Defendant also asserts that there was no evidence for the need of deterrence to deny a sentence of full probation. Specifically, Defendant argues that the trial court erred in its findings of fact that Defendant's testimony lacked credibility, that her efforts at rehabilitation seemed to not be working, and that her explanations of an innocent misunderstanding caused her probation violation. The record clearly supports the trial court's findings of fact, including its credibility determinations of Defendant's testimony.

Finally, Defendant argues that there is no evidence in the record to support the trial court's decision to deny full probation on the basis of deterrence.

The trial court found that the sentence it imposed was necessary to provide a deterrence to Defendant, and not necessarily to the public at large. The trial court specifically stated,

> The reality of this situation is that I - - I mean, this message may not get
> out to the public in terms of any type of deterrent effect on the public,
> but at some point in time on an individual basis, everyone who is using

social media to do what was done in this case is going to have to start paying the piper.

In her argument on appeal Defendant relies heavily on her assertion that the Facebook video viewed by the trial court was the primary source of all the trial court's sentencing determinations, and the incarceration portion should be set aside because the video was not authenticated. We have concluded otherwise. Not only the Facebook video, but Defendant's own testimony at trial and the sentencing hearing showed that Defendant's reaction to social media postings led her to commit the criminal assault on the victim. The trial court noted Defendant's anger issues and desire for vengeance. The trial court also relied on Defendant's prior probation violation and the fact that she committed an additional criminal offense while on bond in the case sub judice, leading to a bond condition violation. Thus, deterrence of Defendant was not the sole basis upon which the trial court denied full probation.

In misdemeanor sentencing, the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). Thus, the trial court is afforded considerable latitude in misdemeanor sentencing. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). The "*Bise* standard is the appropriate standard of review in misdemeanor sentencing cases." *State v. Gregory Gill*, No. W2018-00331-CCA-R3-CD, 2019 WL 549651, at \*16 (Tenn. Crim. App. February 11, 2019).

As for the denial of full probation, "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to . . . questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). "[T]he burden of establishing suitability for probation rests with the defendant." T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). A trial judge must consider the following factors before imposing a sentence of incarceration:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1). Additionally, the sentence imposed should be the least severe measure necessary to achieve its purpose, and the defendant's potential for rehabilitation, or lack thereof, should be considered when determining whether to grant alternative sentencing. T.C.A. 40-35-103(4) and (5). Trial judges are encouraged to use alternative sentencing when appropriate. T.C.A. 40-35-103(6). The trial court ordered a sentence which included probation with all but ninety days suspended. This split confinement sentence is an alternative sentence to full incarceration. The trial court's findings of fact support a basis to conclude that an alternative sentence involving some incarceration is necessary to avoid depreciating the seriousness of the offense. Defendant violated probation conditions imposed in a prior sentence. As to charges brought against Defendant for a criminal offense committed while released on bail for the current offense, the trial court determined at the sentencing hearing that those charges were "warranted."

Having reviewed the record and applied the applicable law to the trial court's sentencing determination, we find no error by the trial court's decision to deny full probation. Defendant is not entitled to relief in this appeal.

CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

- 8 -