IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2025

**STATE OF TENNESSEE v. WILLIE E. SPENCER**

**Appeal from the Circuit Court for Hardin County**
**No. 22-CR-177      J. Brent Bradberry, Judge**

_____

**No. W2024-01120-CCA-R3-CD**

_____

Defendant, Willie E. Spencer, appeals as of right from his guilty-pleaded convictions for three counts of sale of 0.5 grams or more of methamphetamine, for which the trial court imposed an effective sentence of twenty years. On appeal, Defendant contends that the trial court abused its discretion by imposing a maximum in-range sentence. Following our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JILL BARTEE AYERS and STEVEN W. SWORD, JJ., joined.

Jamie L. Davis, Adamsville, Tennessee, for the appellant, Willie E. Spencer.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Neil Thompson, District Attorney General; and R. Adam Jowers, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**Factual and Procedural Background**

The November 2022 term of the Hardin County Grand Jury issued a ten-count indictment charging Defendant in connection with several sales of controlled substances and a search of his residence, which occurred between June and August of 2022. On May 16, 2024, Defendant pleaded guilty pursuant to a plea agreement to three counts of selling 0.5 grams or more of methamphetamine, a Class B felony, with the length of service to be determined by the trial court, but the parties agreed that the sentences would run concurrently. The State dismissed the remaining counts of the indictment. The parties agreed that because Defendant was subject to lifetime community supervision as the result

of a prior sex offense conviction, Defendant was not eligible for an alternative sentence in this case.

At the sentencing hearing, the trial court initially noted that the Tennessee Department of Mental Health and Substance Abuse Services had evaluated Defendant and determined that Defendant's mental condition at the time of the offenses did not prevent him from appreciating the wrongfulness of his actions; that he did not "meet the standards for judicial commitment"; and that he had the ability to consult with his attorney.

The presentence report was received as an exhibit and reflected that Defendant had prior criminal convictions for: aggravated sexual battery in 1986; two counts of auto burglary in 1987; misdemeanor larceny in 1989; aggravated robbery in 1990; robbery in 1998; misdemeanor possession of drugs and unlawful drug paraphernalia in 2006; failure to stop at the scene of an accident in 2009; possession of cocaine, possession of Schedule III dihydrocodeinone with intent to deliver, simple assault, and misdemeanor failure to appear in 2010; and violation of the sex offender registry "residence restrictions" in 2016. Defendant also had numerous traffic-related convictions, mostly for driving with a revoked or suspended license, between 2006 and 2021.

The presentence report also reflected that Defendant was paroled in 1988 and absconded in 1989, after which his parole was revoked. He was paroled again in 1990, absconded in 1990, and was returned in 1992, upon which he was released the same day. Defendant served and completed sentences in Shelby County in 1994-97 and in McNairy County/TDOC in 1999-2002. In 2011, Defendant was placed on State probation, which was revoked in 2014. Later in 2014, Defendant was placed on community corrections, and it was noted that he absconded in 2016, but was returned to community corrections. In 2018, Defendant was discharged from community corrections due to the expiration of his sentence.

The presentence report officer noted that the McNairy County General Sessions Court Clerk confirmed that Defendant had a "hold" due to pending charges for felony evading arrest, driving on a revoked license, speeding, violation of county probation, which was noted as "dealt with on 7-6-23," reckless endangerment, and simple possession/casual exchange.

Defendant reported that he dropped out of high school in the tenth grade to work and help his family; it was noted that he changed schools when his family moved to Memphis after Defendant's mother died. Defendant stated that he began occasionally drinking alcohol beginning at age fifteen or sixteen; he noted that he drank alcohol daily for a few months in his thirties. Defendant reported using methamphetamine occasionally beginning at age twenty-six, which became daily use in his thirties. Defendant stated that

his last methamphetamine use was "one or two years ago." Defendant reported being addicted to "hydros" in 2010-11 after he was injured in a car accident. Defendant denied using other illicit drugs. Defendant stated that, three years previously, he sought out and attended weekly alcohol and drug classes for several months.

Defendant reported that his wife was no longer in contact with him after his arrest in this case. Defendant stated that he had been collecting Social Security disability benefits for twenty-five years, during which time he had done some "under the table" work. Defendant reported being evaluated for behavioral health issues twice; once was to assess his competency to stand trial in this case, and the other was in his twenties when he was "hearing voices," although he did not receive counseling or medication.

Relative to medical issues, in addition to spinal damage from the car accident in 2010-11, Defendant reported that he had been diagnosed with prostate cancer eight years prior and had undergone surgery for it. He stated that he had some ongoing pain and bleeding with urination.

Savannah Police Department Captain Alan Hooper testified that, between June 29 and August 1, 2022, he was a case agent with the 24th Judicial Drug Task Force ("Drug Task Force"). Captain Hooper stated that Defendant sold methamphetamine to a confidential informant participating in the following controlled drug buys: on June 29, Defendant sold 3.76 grams for $100; on July 14, Defendant sold 2.11 grams for $80; on July 20, Defendant sold 3.1 grams for $100; and on July 28, Defendant sold 0.66 gram for $50. After the fourth sale, the Drug Task Force obtained a search warrant for Defendant's residence, which they executed on August 1. Captain Hooper noted that Defendant lived with his wife less than one-quarter of a mile from an elementary school.

Captain Hooper testified that he and other officers recovered 20.33 grams of methamphetamine, 6 grams of marijuana, and 42 gabapentin pills. Captain Hooper stated, "On [Defendant's] person was recovered [about] $1,200 of U.S. currency, [$]50 of that being buy money that was used in the previous controlled transaction" on July 28. They also found a set of digital scales and glass pipes. He said that they also seized a red vehicle titled to Defendant's wife and the $8,400 in cash inside it. Captain Hooper stated that the methamphetamine, scales, and pipes were located in the bedroom.

Captain Hooper noted that the State had awarded the money on Defendant's person to the Drug Task Force, and he identified a Drug Task Force "currency sheet," which reflected that $1,227 was seized. Captain Hooper identified a second currency sheet, which he testified related to the cash found in the vehicle. The currency sheet reflected that $8,463 was seized, primarily in twenty-dollar and one-hundred-dollar bills. Captain Hooper testified that they found the cash in the center console rolled and "banded up" inside a

-3-

glove that was inside a black sack. He stated that, in his experience, drug sellers concealed their cash separately from drugs. Captain Hooper also noted that the controlled drug sales were made using twenty-dollar bills, of which Defendant had a large quantity. Captain Hooper stated that Defendant's wife came to the police station and signed a voluntary relinquishment of her right to the vehicle and its contents.

Captain Hooper testified that he believed all the seized cash was from the sale of illegal drugs. Captain Hooper stated that the presence of an ounce of methamphetamine inside the residence and the presence of multiple types of drugs and drug paraphernalia was indicative of Defendant's selling drugs. Captain Hooper stated that, after issuing Defendant's *Miranda* warnings, Defendant told him that all the items seized were his, that he was unemployed, and that he received a "check from the government."

On cross-examination, Captain Hooper agreed that Defendant claimed the drugs and took "responsibility for his actions[.]" He stated that, during the search of Defendant's home, about seven grams of methamphetamine were found in a pink bag that also contained Defendant's wife's identification, which resulted in criminal charges against her. Captain Hooper agreed that the confidential informant who made the controlled drug buys was a drug user. He agreed that some of the drug paraphernalia in Defendant's residence was related to drug use. He stated that methamphetamine found in the house was weighed in the field and that the 20.33 grams included its container; he acknowledged that the laboratory weight would have been "a little less."

Upon examination by the trial court, Captain Hooper testified that the seven grams of methamphetamine belonging to Defendant's wife were not included in the 20.33 grams. Captain Hooper stated that Defendant's wife did not claim the cash in the vehicle. Upon further questioning, the prosecutor interjected and stated that the "gross weight" of the methamphetamine at Defendant's residence, not including the methamphetamine attributed to Defendant's wife, was about 18 grams.[1]

Defendant testified that he was fifty-six years old and that these were his first methamphetamine-related charges; he also stated that "this is the first drug charge [he] ever had" and that he had never been in trouble before. Defendant agreed that he was taking responsibility for his actions and would accept the trial court's sentence. He requested a minimum sentence of twelve years and probation.

---

[1] The prosecutor stated that he was reading from the Tennessee Bureau of Investigation's laboratory report; when asked whether the trial court wanted to make the report part of the record, the trial court responded negatively. The trial court noted that it was not "weighing heavily . . . whether it was 10 grams or 20 grams."

Defendant testified that he had been using methamphetamine for twelve or thirteen years. Defendant stated that he was previously addicted to methamphetamine but that he had been sober since going to jail one year and three months before the sentencing hearing. Defendant said that he sold methamphetamine to buy drugs for his personal use and that his addiction "strongly motivated" him. Defendant averred that he only sold methamphetamine to known drug users. Defendant stated that he claimed the drugs in the house because he did not want his wife to get into trouble. Defendant asserted that this case was the first time he sold methamphetamine and that he knew it was wrong.

Defendant testified that he had previously sought treatment for his addiction and attended a one-month outpatient program "a couple of months before [he] came in here" but that the program would not allow him to continue due to his status as a sex offender. Defendant stated that, if he had received treatment, this case would not have happened. He claimed multiple times that he had not been in trouble in thirty years. The trial court then interjected that Defendant had "a cocaine charge . . . and a Schedule III . . . charge in 2010. That's not 30 years ago." Defendant stated that those charges were his most recent and that he had "stayed out and [done] good" for thirteen or fourteen years.

Defendant testified that he lost his mother when he was young and that, after moving to Memphis, he "signed off on this sex offender charge" because he was illiterate. Defendant asserted that he had not known what he had been "signing to" and that he had been trying to have it expunged from his record.

Defendant testified that, due to his age and having had prostate cancer for ten years, any incarcerative sentence would be a life sentence. Defendant noted that he knew he would not receive parole because he was a sex offender, and he claimed, "[E]very sentence I get, I have to flatten out[.]" Defendant testified that, if he was released from prison, the trial court would never see him again and that he had "learned [his] lesson." Defendant agreed, though, that trial counsel had discussed with him that the trial court could not grant him probation or send him to rehabilitation. Defendant stated that he did not have any previous mental health issues. Defendant said that he had someone else write down a letter he wished to submit to the trial court.

On cross-examination, Defendant acknowledged that he had previous drug convictions. Defendant agreed that he was convicted of felony possession of dihydrocodeine with intent to deliver in 2010. He denied, though, having been convicted of misdemeanor possession of cocaine in June 2010. When asked whether he had violated the sex offender registry "a few years ago," Defendant responded that he had been informed of that charge, but he maintained that he had reported every ninety days as instructed.

Defendant agreed that McNairy County had a "hold" on him for an incident in 2023. Defendant explained that he ran from the police because he knew he was "facing time" in Hardin County. When asked whether he had absconded from parole, Defendant stated that he did not recall ever being on parole. When asked whether he had received and absconded from community corrections, Defendant responded that he had paid his sex offender registry fines.

Three letters written by Hardin County Sheriff's Office corrections officers were submitted as an exhibit; two of them were addressed to the "parole board." The officers stated that Defendant was a polite and cooperative inmate who had accepted responsibility for his mistakes and that he was ready to go back into society.

Defendant's letter to the trial court reflected that he "begg[ed] for one chance at probation" and stated again that he had "never had a drug charge before."

The trial court stated that it had considered the principles of the Sentencing Act, the presentence report, the plea agreement, the evidence presented at the sentencing hearing, the parties' arguments, statistical information from the Administrative Office of the Courts, and Defendant's testimony. The trial court noted that no sentencing alternatives were available because, by statute, a twelve-year sentence was ineligible for probation.

The trial court found that Defendant was a Range II multiple offender and that the sentencing range for a Class B felony was twelve to twenty years. The trial court applied enhancement factor (1), that Defendant had a previous history of criminal convictions and behavior in addition to those necessary to establish his range, noting that Defendant had nine prior felony convictions and that an additional felony charge was pending in McNairy County. The trial court also noted that Defendant had six prior misdemeanor convictions and thirteen driving convictions. *See* Tenn. Code Ann. § 40-35-114(1).

The trial court also applied enhancement factor (8), that Defendant before trial or sentencing failed to comply with the conditions of a sentence involving release into the community. *See* Tenn. Code Ann. § 40-35-114(8). The trial court noted that Defendant had absconded from parole and community corrections several times beginning in the 1980s and ending in 2016, and that he violated his probation multiple times in McNairy County between 2011 and 2013.

The trial court declined to apply mitigating factor (1), that Defendant's conduct neither caused nor threatened serious bodily injury, finding that the quantity of methamphetamine sold was dangerous and that the circumstances "weigh[ed] against mitigation here[.]" *See* Tenn. Code Ann. § 40-35-113(1). The trial court also declined to apply mitigating factor (2), that Defendant acted under strong provocation due to his drug

addiction.  *See* Tenn. Code Ann. § 40-35-113(2).  The trial court stated, "I've not had one drug addict stand in this court before that was arrested with $1,200 in their pocket and another 8 grand in their car.  I just don't buy the addict story."  The trial court also noted that Defendant only sought rehabilitation after he had been charged in this case.  The trial court remarked that it was "inclined not to make an example of [Defendant] but to make an example of every drug dealer that comes into Hardin County and that the [c]ourt has an opportunity to sentence."

Based upon these considerations, the trial court sentenced Defendant to twenty years for each count, to be served concurrently in accordance with the plea agreement.  Defendant timely appealed.

## **Analysis**

On appeal, Defendant contends that the trial court abused its discretion by ordering a maximum in-range sentence.  The State responds that the trial court's sentence was proper.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen.  Tenn. Code Ann. § 40-35-210(e); *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012).  Although the trial court should consider enhancement and mitigating factors, such factors are advisory only.  *See* Tenn. Code Ann. § 40-35-114; *see also Bise*, 380 S.W.3d at 698 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008).  We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion."  *Carter*, 254 S.W.3d at 345.  In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and

principles of [the Sentencing Act].'" *Id*. at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles" set out in Tennessee Code Annotated sections 40-35-102 and 103. *Carter*, 254 S.W.3d at 346.

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *Bise*, 380 S.W.3d at 707. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In this case, the trial court detailed its findings and placed its reasons for the sentences imposed on the record. The record establishes that the trial court properly considered the purposes and principles of sentencing. The trial court's decision to impose within-range sentences is presumptively reasonable. *Bise*, 380 S.W.3d at 707.

The trial court found that two enhancement factors applied—that Defendant had a previous history of criminal convictions and behavior in addition to those necessary to establish his range and that Defendant before trial or sentencing failed to comply with the conditions of a sentence involving release into the community. *See* Tenn. Code Ann. § 40-35-114(1), (8). Defendant does not challenge the applicability of the enhancement factors.

Defendant contends first that the trial court abused its discretion by failing to consider as mitigating factors his "truthfulness, candor, cooperative nature, and his willingness to accept punishment," as well as his having sought treatment for his addiction. Defendant disputes the trial court's finding that he only sought treatment after being charged in this case. He also argues that the trial court erred by failing to explain why it did not place "more emphasis" on these mitigating factors.

Finally, Defendant asserts that the trial court "relied on incorrect information that was not presented at sentencing." Specifically, Defendant argues that the trial court "implie[d] that nearly '8 grand' was found in [Defendant's] vehicle and that nearly $1,200 found in his pocket belonged to him, however, there was no evidence presented at trial or at sentencing that the car or money belonged to [D]efendant."

Defendant's arguments amount to disagreement with the trial court's credibility determinations and the application and weight it gave to mitigating and enhancement

factors. This court has recently reiterated that this court will not interfere with the trial court's credibility determinations as the finder of fact in sentencing "unless the evidence contained in the record clearly preponderates against these findings." *State v. Francis*, No. M2022-01777-CCA-R3-CD, 2024 WL 4182870, at *6 (Tenn. Crim. App. Sept. 13, 2024) (quoting *State v. Melvin*, 913 S.W.2d 195, 202 (Tenn. Crim. App. 1995)), *no perm. app. filed*. In addition, as stated above, enhancement and mitigating factors are advisory only, and the misapplication of an enhancement or mitigating factor is no longer a basis to reverse a sentence. *See Bise*, 380 S.W.3d at 706. Put another way, even if all of Defendant's contentions were taken as true, and the trial court had erroneously failed to apply mitigating factors, we would not disturb the sentences unless they "wholly departed" from the purposes and principles of sentencing. *See id.*

With that framework in mind, Defendant has failed to show the within-range sentences were improper. Our review of the record, particularly the presentence report containing Defendant's lengthy criminal history and history of noncompliance with the conditions of release, reflects that the trial court was well within its discretion to order a maximum in-range sentence. Defendant is not entitled to relief on this basis.

## Conclusion

Based on the foregoing and the record as a whole, the judgments of the trial court are affirmed.

s/ *Robert L. Holloway, Jr.*
ROBERT L. HOLLOWAY, JR., JUDGE